MELLON, Respondent, *v.* KELLY et al., Appellants.

(No. 7,316.)

(Submitted January 9, 1935. Decided January 28, 1935.)

[41 Pac. (2d) 49.]

12

*Mr. Earle N. Genzberger,* for Appellant Montana Auto & Garage Company, submitted a brief and argued the cause orally.

14

*Mr. John K. Claxton,* for Appellant John Kelly, submitted a brief and argued the cause orally.

16

*Mr. P. E. Geagan* and *Mr. George W. Howard,* for Respondent, submitted a brief; *Mr. Geagan* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to recover for personal injuries sustained by him, resulting from the collision of an automobile, the property of the defendant Kelly, occurring in the garage of the defendant Montana Auto & Garage Company.

In his complaint plaintiff charged the defendants with negligence, in "that they failed to keep any proper lookout for the presence of other persons or automobiles upon the floor of said garage; that they failed to give to this plaintiff any warning of the approach of the said automobile of the defendant Kelly; that they started and put in motion the said Packard automobile without having the same under proper control, so as to avoid striking this plaintiff or the automobile

of plaintiff, and that they failed to manage, operate and control the automobile of the defendant Kelly, so as to prevent the same running into and striking this plaintiff, and the automobile of plaintiff, while the plaintiff and his said automobile were in the garage of the said defendant corporation, and standing on the floor thereof, and in so managing, operating and handling said automobile of the said defendant Kelly, that the same was done without due regard to the safety of the life, limb and property of this plaintiff, while he was rightfully in the said garage.''

The defendants filed separate answers, and on the trial of the cause each was represented by different counsel. A trial was had, resulting in a verdict and judgment of $10,000 against both defendants. Separate motions for new trial on behalf of each of the defendants were made, heard and denied. Defendants have separately appealed from the judgment.

On October 5, 1932, plaintiff stored his automobile in the garage of the defendant corporation in Butte. Later in the day he returned to the garage for the purpose of securing the automobile. He surrendered his claim check to a floorman, and his automobile was brought out into the runway in the garage. In the meantime plaintiff, together with a salesman there employed, viewed some cars in the salesroom of the garage and returned to plaintiff's car, still located in this runway, and were there standing by its side facing one another engaged in conversation with reference to a proposed exchange of automobiles at the time of the accident.

The defendant Kelly was the owner of a Packard automobile, which he regularly stored in the garage, and which, at this particular time, was parked in a space regularly used for the storage of automobiles when not in use. It was parked at an angle of 80 degrees with reference to the car of plaintiff. Kelly attempted to start his automobile, and, being unsuccessful, called a floorman, whom he requested to secure gas and fill the vacuum tank. This floorman raised the hood on the car and took the plug out of the vacuum tank. Kelly at that time was standing along the right-hand side of the car.

18

The floorman testified that he did not look inside the car and did not know whether it was in or out of gear. He made no investigation to ascertain if there was any gasoline in the automobile; thereupon he went to secure gasoline to fill the vacuum tank. He further testified that he was familiar with the method of starting a Packard car, and that none of the various operations performed by him would start this particular automobile; that he was at the gas pump when he heard the car start; that the sound was like any ordinary motor starting up. This Packard automobile was seen approaching the car of the plaintiff by the salesman when about four feet distant from the side of the plaintiff's car. It collided with it, injuring plaintiff. The nature and extent of his injuries will be the matter of further discussion later.

The floor of the garage was almost level, with a very slight slope in the direction from the place where the Packard automobile was parked toward the location of plaintiff's car. The floorman testified that, if the brakes were released on the Packard automobile and the car out of gear, it would not, unless pushed, roll down over the course traveled by it, resulting in the collision. He based this opinion upon his observations while working in the garage, stating that no car had ever rolled on this floor under similar circumstances. The salesman expressed the opinion that the engine must have been running, propelling the car forward at the time he first observed it immediately preceding the collision, basing his opinion upon the rate of speed, as he stated it was traveling too fast for the car to be merely rolling forward.

It was testified that immediately following the accident plaintiff said, ''What in hell did you do that for?'' to which Kelly replied, ''I didn't do that on purpose.'' The Packard car was pushed backward to release plaintiff from his position between the two cars. No one assisting in this movement was able to testify whether the Packard car was in or out of gear at the time.

Plaintiff was removed to the hospital, and testified that Mr. Kelly came to see him there and told him he was sorry for

the accident, and said, "We were trying to start the car down there and it got away from me." The other evidence offered as a part of plaintiff's case related to the nature and extent of the injuries suffered by plaintiff and the damages sustained by him.

At the close of plaintiff's case, and after plaintiff had announced that he rested, counsel for the defendant garage company rested and attempted to make a motion for a directed verdict. The trial court refused to permit the making of this motion at that time. Counsel for the defendant Kelly made a motion for a nonsuit, which was denied. Evidence was then offered in support of the answer of Kelly, who testified in person as to his attempt to start his car, and his request to the floorman to put gas into the vacuum tank. He did not recall what answers were made to questions put to him at the hospital. He testified that at the time the car started he was reaching through the right-hand door into the car for the purpose of turning the ignition switch, but did not touch the control before he heard the car go "puff, puff, puff." He was dragged forward with the car, and the crash ensued. He did not know whether at the time the brake was on, but testified that his usual procedure in starting was to get into the car and release the brake, and he did not know whether the car was in or out of gear.

At the close of all the testimony, separate motions for directed verdict were made by each of the defendants and denied by the court.

The defendant garage company assigns error upon the failure of the trial court to hear its motion after it had rested and before the evidence offered by the defendant Kelly was received, and also on the ruling denying the motion when it was ultimately made.

The evidence offered by the defendant Kelly in nowise added to the strength of plaintiff's case as against the defendant garage company. The company, after its rest, made no attempt to offer further evidence, nor did it do anything to in any way waive the effect of its rest. The rule appears

to be well-nigh universal that a defendant may at any time after the plaintiff has rested his case, upon resting his own, make a motion for a directed verdict. (2 Bancroft on Code Pleading & Practice, p. 1915; 64 C. J. 431.) The trial court was in error in refusing to permit defendant garage company to make a motion for a directed verdict after it had announced its rest. However, the error was harmless in this case.

This court has often announced the rule that upon motion for nonsuit or directed verdict the evidence must be viewed from the standpoint most favorable to plaintiff, and every fact must be deemed proved which the evidence tends to prove. (*Nangle* v. *Northern Pacific Ry. Co.*, 96 Mont. 512, 32 Pac. (2d) 11.) No case should ever be withdrawn from the jury when reasonable men might draw different conclusions from the evidence. (Id.)

The owner of a store is in duty bound to exercise ordinary care to keep his premises safe for patrons and to warn them of any hidden or lurking danger on the premises (*Robinson* v. *F. W. Woolworth Co.*, 80 Mont. 431, 261 Pac. 253); but he is not an insurer against all accidents and injuries to such persons while there (*S. S. Kresge Co.* v. *Fader,* 116 Ohio St. 718, 158 N. E. 174, 58 A. L. R. 132). These rules apply to the keeper of a garage. (*Campbell* v. *Sutliff*, 193 Wis. 370, 214 N. W. 374, 53 A. L. R. 771.)

The evidence here discloses that the Packard automobile did not roll down over the floor of the garage merely because the brake was released and the car thrown out of gear. The floorman, the employee of the defendant garage company, did nothing in his operations in connection with the car which would have caused it to start. An inference of negligence cannot be drawn from the bare fact that an injury occurs. (*Lyon* v. *Chicago, M. & St. Paul R. Co.*, 50 Mont. 532, 148 Pac. 386.) However, negligence may be established by circumstantial evidence. (*Harrington* v. *H. D. Lee Merc. Co.*, 97 Mont. 40, 33 Pac. (2d) 553, 559; *Fusselman* v. *Yellowstone Valley L. & I. Co.*, 53 Mont. 254, 163 Pac. 473, Ann. Cas. 1918B, 420; *Childers* v. *Deschamps*, 87 Mont. 505, 290 Pac. 261.)

No inference may be drawn from the evidence tending to establish any act of negligence, either of commission or omission, on the part of the garage company or its employees. When it is sought to prove a cause of action by circumstantial evidence, the circumstances, if any thus proved, must not only tend to prove negligence and that such negligence was the proximate cause of the injury, but they must equally tend to exclude any other reasonable conclusion. (*Johnson* v. *Herring,* 89 Mont. 420, 300 Pac. 535; *Norton* v. *Great Northern R. Co.,* 85 Mont. 270, 278 Pac. 521.) Counsel for the plaintiff do not direct our attention to a single inference that may be drawn from the testimony which tends to prove negligence and thereby exclude other theories consistent with the presence of negligence on the part of the garage company. Under this state of the record, reasonable men must agree that the plaintiff has failed to prove that he sustained the injuries of which he complains, by reason of the alleged negligence of the defendant company. The trial court was in error in denying the company's motion for a directed verdict.

Defendant Kelly made a motion for nonsuit and for directed verdict, as above noted, both of which were denied, and by appropriate specifications of error a review of the ruling on each is here sought. When this defendant did not stand upon his motion for nonsuit but proceeded with his defense, he took the risk of supplying the defects in plaintiff's case. (*Harrington* v. *H. D. Lee Merc. Co.,* supra.) The rule with reference to the sufficiency of the evidence on a motion for nonsuit and directed verdict being the same, as heretofore stated, we will determine whether the trial court was in error in denying the motion for directed verdict.

The question is fairly presented: Was the circumstantial evidence, including the legitimate inferences which the jury was entitled to draw from it, treating it in the light most favorable to the plaintiff, sufficient to prove that the Packard automobile was started as the result of an act of negligence, charged in the complaint, on the part of the defendant Kelly?

In the case of *Harrington* v. *H. D. Lee Merc. Co.,* supra, we said: ''An inference is a deduction which the reason of the jury makes from the facts without an express direction of the law to that effect. (Sec. 10601, Rev. Codes 1921.) It 'must be founded: 1. On a fact legally proved; and, 2. On such a deduction from that fact as is warranted by a consideration of the usual propensities * * * of men.' (Sec. 10603, Id.; *Jenkins* v. *Northern Pacific Ry. Co.,* 44 Mont. 295, 119 Pac. 794).''

Here it appears from the evidence that, if the Packard automobile was parked with the brakes released and out of gear, the force of gravity would not cause it to move forward and collide with the plaintiff. The evidence discloses that defendant Kelly had been endeavoring to start the car, and from his own testimony, that of the floorman and the salesman, it is established that the engine of the automobile did start. Admittedly, it proceeded forward, and since the engine started, the car must have been in gear or it would not have proceeded forward. It is a legitimate inference from Kelly's testimony, based upon his statement as to his custom in starting the car, that the brake had been released, and also that the ignition switch was on. True, he testified that he did not know whether the car was in gear or the brake released. He further testified that he was carried forward by the car and could not stop it in order to avert the collision. He gave no warning of its approach. The car traveled a distance of twenty-two feet before the collision occurred. There was abundant space between the two cars in question, so that, if Kelly's car had been driven, it could have passed without any collision occurring.

In the light of these circumstances and the inferences which the jury was legitimately entitled to draw from them, we think the evidence sufficient to go to the jury upon the question of defendant Kelly's negligence. In the following cases, it was held that the circumstantial evidence proved, aided by the inferences, was sufficient to take the case to the jury: *Hepp* v. *Quickel Auto & Supply Co.,* 37 N. M. 525, 25 Pac. (2d) 197; *Barbanes* v. *Brown,* 110 N. J. L. 6, 163 Atl. 148; *Sheri-*

*dan* v. *Arrow Sanitary Laundry Co.*, 105 N. J. L. 608, 146 Atl. 191. Accordingly, the court was not in error in denying defendant Kelly's motion for a directed verdict.

One of the grounds of the motion of Kelly for new trial was that of ''excessive damages appearing to have been given under the influence of passion and prejudice.'' As the result of plaintiff's injury, he suffered a compound comminuted fracture of both bones at about the junction of the lower third and middle third of the leg. There were two open cuts in this leg. Extending out of one of these wounds was the big bone of the leg, protruding not only through the wound but through plaintiff's pants leg. He had on the back of his right leg a cut about four inches long which was sutured. He had a mark, general bruising, involving principally the inner side of the right knee, the right knee-joint, and considerable bruising on the right arm, the left arm, in the region of the right shoulder, and a marked bruising and discoloration along the lower abdomen, principally on the right side and extending well across just above the pubic bone. As a result of these injuries, plaintiff was confined in the hospital from the date of the accident to December 12, 1932. He incurred hospital and doctor bills in the sum of $1,000. The effect of these injuries, as testified to by his attending physician, is that plaintiff is handicapped as to the use of his left foot and leg, owing to a certain curvature and shortening, and that he will undoubtedly suffer some pain usual in fracture cases and perhaps intensified by the deformity that is there, and certainly it is a weaker limb than it would have been had it not been injured.

Plaintiff was an electrician whose duties required him to climb poles, repair power lines, read meters and collect bills. As the result of his injuries he is unable to perform any duties requiring him to climb poles or repair power lines. Prior to his injuries he was earning $250 a month. He now occupies his former position, but it is necessary for him to employ another to perform such services as he is unable, by reason of his condition, to perform; for these services he pays about $100 per month.

At the time of the trial he was earning altogether about $200. While, as stated, he was earning $250 a month, owing to the depression his earning power was decreased approximately $50 per month. It may therefore be fairly said that his earning power, as a result of these injuries, is diminished to the extent of $100 per month. Physicians testified that he will never be able, because of his injuries, to perform his duties in climbing poles and repairing power lines. He was 45 years of age, and it was shown on the trial that he had an expectancy of 25 years. In addition, there was some testimony tending to show that a hernia was developing which was in all probability a result of the injuries sustained.

This court has said that it is peculiarly within the province of juries to fix the amount of compensation to be paid for personal injuries, and that it will not interfere with their awards, unless the result of their deliberations is such as to shock its conscience and understanding. (*Wise* v. *Stagg*, 94 Mont. 321, 22 Pac. (2d) 308, and cases cited.) Under the evidence in the record we are unable to say that the verdict in this case is excessive.

Over the objection of defendant Kelly, the court gave the following instruction: "You are instructed that there are two kinds of evidence, direct evidence and indirect evidence. Direct evidence is that which proves the fact in dispute directly, without an inference or presumption, and which in itself, if true, conclusively establishes that fact. For example, if the fact in dispute be an agreement, the evidence of a witness who was present and witnessed the making of it is direct. Indirect evidence is that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish the fact, but which affords an inference or presumption of its existence. For example, a witness proves an admission of the party to the fact in dispute. This proves a fact from which the fact in dispute is inferred. Indirect evidence is of two kinds, inferences and presumptions. An inference is a deduction which the reason of the jury makes from the facts proved without

an express direction of the law to that effect. Presumption is a deduction which the law expressly directs to be made from particular facts. An inference may be founded: 1. On a fact legally proved; and 2. On such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business or the course of nature." This instruction is a combination of sections 10493, 10496, 10497, 10601, 10602, and 10603 of the Revised Codes of 1921.

The chief objection to the giving of this instruction was that it was not applicable to the issues presented by the evidence in the case, in that it permitted the jury to indulge in conjecture and speculation in determining inferences and presumptions to be drawn from the direct evidence submitted by the defendant Kelly. The instruction was but the compilation of the sections of our statutory law noted above. The evidence in this case was circumstantial, and by this instruction the jury was told in the language of the statute what inferences it was entitled to draw from the facts proved. The giving of it was not error under the facts and circumstances of the case.

Error is assigned upon the action of the court in giving instruction No. 16, reading as follows: "You are instructed that in Montana every person is responsible for an injury occasioned to another by his want of ordinary care or skill, in the management of his property or person, except so far as the latter has, by want of ordinary care, brought the injury upon himself." The objection was to the effect that the instruction was confusing, and in effect instructed the jury that the defendant was responsible for the injuries sustained by the plaintiff, and that it presumes negligence on the part of the defendant. This instruction is taken from section 7579, Revised Codes 1921. By instruction No. 20 the jury was told that "the court in its instructions does not intimate one way or another whether or not either defendant was in any way negligent in the operation or starting of said automobile." If the giving of instruction No. 16 was in any manner open to the

objection made, it was cured by the giving of the last-quoted instruction.

Error is assigned upon the giving of instruction No. 25, reading as follows: "You are instructed that where a person or property is injured through negligence of two or more persons jointly that each and all of the persons through whose negligence the injury or damage resulted are liable therefor." The objection is that the instruction is confusing and amounts to the giving of an abstract proposition of law. The court also, over like objection, gave instruction No. 26, as follows: "You are instructed that where a person is damaged, either in person or property, by the joint negligence of two or more persons, he does not have to show that one was more, or less, negligent than the other; and it is no defense, on the part of either of the ones negligent, to show that one was more negligent than the other."

By instructions Nos. 27 and 31 the jury was told: "27. Before you can find your verdict in favor of the plaintiff and against the defendant John Kelly, you must find from a preponderance of all the evidence in this case that the said defendant John Kelly, was guilty of some act of negligence charged in plaintiff's complaint, and, as a result thereof, the plaintiff was injured; and unless you so find from a preponderance of the evidence that he was guilty of negligence as defined in these instructions, and as charged in the complaint, then your verdict must be in favor of the defendant John Kelly, and against the plaintiff."

"31. You are instructed that in this case the defendant John Kelly, and the defendant Montana Auto and Garage Company, have been charged with negligence by the plaintiff, and each of said defendants has appeared separately in answer to such charge of negligence. You are instructed that it is your duty to consider the issues of negligence herein as to each of such separate defendants in accordance with the instructions of the court and in the light of the preponderance of the evidence introduced herein; and that, in accordance with said instructions, you may find in favor of one defendant and

against plaintiff, and in favor of plaintiff and against the other defendant, or in favor of plaintiff and against both defendants, or in favor of both defendants and against plaintiff, depending upon how you determine the issues of negligence as defined in these instructions.''

We appreciate that this court has condemned the giving of abstract propositions of law in certain cases, but we have also held that, where the facts are few and simple, it is not error to give instructions containing abstract statements of law. (*Edquest* v. *Tripp & Dragstedt Co.*, 93 Mont. 446, 19 Pac. (2d) 637.) Furthermore, no offered instructions were proposed by the defendant in conformity with these objections, and we see no error in the giving of these instructions, in view of the other instructions given and the state of the record discussed.

Error is assigned on the failure of the court to give offered instruction No. 42. We think this instruction was fully covered by other instructions of the court.

As a result of our conclusions already expressed, the question arises whether we may reverse the judgment as to one defendant and affirm it as to the other.

It was the rule at common law that a verdict could not be set aside as to one of several joint tort-feasors and permitted to stand as to the other. (20 R. C. L. 224.) Our statute, section 9315, Revised Codes 1921, provides that, ''in an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper.'' California courts, under an identical statute, have held that this early rule has been relaxed by judicial decision and modified by statute, and in that state it does not exist. (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, 116 Pac. 513; *Fowden* v. *Pacific Coast Steamship Co.*, 149 Cal. 151, 86 Pac. 178; *Nichols* v. *Dunphy*, 58 Cal. 605.) It is generally held that a judgment, even when against joint tort-feasors, may be reversed as against part of the defendants and sustained as to the other. (20 R. C. L. 224; note in L. R. A.

1918C, 970; note in 19 Ann. Cas. 798; note in 27 L. R. A. (n. s.) 212.) This rule is, however, subject to the exception that, where the verdict is excessive, or the amount of the verdict is largely in the discretion of the jury without the aid of any very definite testimony by which to gauge the amount of the verdict, as is well illustrated in the case of *Harrington* v. *H. D. Lee Merc. Co.*, supra, it does not apply.

Accordingly, the judgment is reversed as to the defendant Montana Auto & Garage Company, and the cause remanded to the district court of Silver Bow county, with directions to enter a judgment of dismissal as to that defendant, and, as to the defendant Kelly, the judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

Rehearing denied February 27, 1935.