LEYBOLD, Respondent, v. FOX BUTTE THEATER COR-
PORATION, Appellant.

(No. 7,589.)

(Submitted October 22, 1936. Decided November 5, 1936.)

[62 Pac. (2d) 223.]

*Mr. R. F. Gaines,* for Appellant, submitted a brief and argued the cause orally.

234

Mr. *N. A. Rotering,* for Respondent, submitted a brief and argued the cause orally.

236

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to recover damages resulting from her fingers being caught between the edges of two swinging doors at the entrance of the theater of the defendant known as the American Theater, in the city of Butte. Plaintiff and her husband, together with two of their children, attended the picture show at defendant's theater on the evening of April 27, 1934, and paid for their entertainment the usual admission fee. The injury of which complaint was made occurred at the time plaintiff was leaving the theater.

With reference to the acts of negligence on the part of defendant, plaintiff alleged in her complaint that "it was always customary for the defendants to have some one at the doors of said American Theater so that people and patrons of defendants, leaving said American Theater would not be hurt or injured by any of the swinging doors swinging back and hitting or striking the hands of any of its patrons; and the plaintiff had theretofore attended shows at said American Theater upon the invitation of defendants; that plaintiff knew that the defendants had kept employees and servants at said doors of exit from said American Theater to keep defendants' patrons from being hurt by swinging doors; and plaintiff relied upon this custom. * * * That defendants did not have anyone near said doors to protect the members of the public, or this plaintiff, from being injured; that defendants failed and neglected to warn the plaintiff that it had no one near said doors to protect plaintiff, and defendants did not warn plaintiff that she was liable to be hurt or injured when she would attempt to walk out of said theater; that defendants did not provide any device, to-wit, a bar, knob or handhold on said doors, to protect members of the public, or plaintiff, from being hurt

by said door or doors; * * * nor did the defendants have anyone near said doors to prevent the violent swinging back of said door or doors."

The defendant by answer admitted that the fingers of plaintiff were caught between the two swinging doors while she was leaving the theater after attending the show as a patron, and denied all of the other important allegations. It affirmatively alleged contributory negligence on the part of plaintiff. The cause was tried before the court sitting with a jury.

The witness Frame, who qualified as an expert carpenter and builder and who was familiar with these doors, testified on behalf of the plaintiff, giving the following description of these swinging doors: "The doors are what is known as a double-acting swinging door, each door 38½ inches in width, that is three feet two and a half inches in width, and they are seven feet and a half inch in height; besides there is an inch piece nailed on the frame all the way around which is brought about from the particular type of hinge that is used. It is one inch; the width of the door in this case is approximately two inches. The reason for that piece being nailed on the frame is to make up for the barrel-type hinge that is employed, a hinge something like on the door behind you, the barrel-type hinges. There is a barrel on each side of the door containing a spring. The spring is incased in this barrel; it is known as a Boomer spring hinge. * * * There is nothing on the door at all, on the surface of the door, on either side, not even a push plate on this door, or there's no handhold or grip of any kind. The center part of the door consists of a plate glass about five feet long and approximately two feet wide, thick, heavy plate glass, held in place by the molding on either side. The widest part of the door around the glass is approximately ten inches in width, and the bottom part of the door, known as the belt, is about sixteen inches in width; the upper part of the door is the same width as the stiles or side portions of the door." This witnes testified over objection that doors such as he described above, without any handholds or checking devices, "are not safe at all."

Plaintiff, her husband, and their two children, aged four and six years, respectively, after attending the show on the night in question and at about 11 o'clock, "started to leave the theater." They went through the swinging doors leading into the lobby of the theater, where plaintiff and her husband stopped to put on the children's coats. The husband and the older child procceded through the swinging doors leading to the sidewalk before plaintiff and her four-year-old son continued on their way. She described her movements thereafter as follows: "I was intending to step out upon the sidewalk, through the east set of doors, east of the ticket office. As I left the theater, when I came to the doors, I pushed the right door, or the west door of the east set, towards the sidewalk, and I held that open with my right hand to let my little boy go through, and then I was letting it back so that it wouldn't fly against anyone else and injure them, and, as I was doing that, someone pushed through the east door and let that door swing back and, before I could get my hand out, it caught my hand in between the two doors. There was nothing upon these doors in the way of a handhold or knob or any other similar device. I had been through these doors before. This evening it was not the same as it had been before. Before there was usually an attendant there; or other times when I attended the theater, these doors, at the end of the show when the crowd was coming out, they were left opened; they were blocked open. As I was passing out through the door there were other people around trying to get out; the crowd was coming from out of the show. There was no way for me to take hold of the door other than pushing it as I did. If there were a hand-railing or handhold or knob there I would have had a hold of that." She further testified: "I kept my hand on the door, and I was letting it go back slowly so that it wouldn't swing against anyone. * * * There was two young boys—I imagine they were about seventeen or eighteen years old—and they pushed through the door, the east door, and they didn't hold onto it at all; they just let it fly. * * * I wasn't out over a foot from the door, because I was still hanging onto the door

when my hand got caught. I couldn't have been very far from the doors. * * * It [the door] smashed my hand; caught my hand in between the two doors; smashed my index finger, and the rest of my hand was bruised and skinned.''

Plaintiff had attended the theater at least once previously during the month of April. She had resided in Butte for nineteen years and had frequented ''picture shows a good deal before she had children and possibly afterwards when she could get away.'' In general, ''she was familiar with the American theater house.'' She testified as to her reliance upon the custom of an attendant being present at the door, in the following manner:

''A. * * * Nobody warned me or cautioned me that there was no attendant there on this 27th day of April, 1934.

''Q. At other times, you say, the attendant was there? A. Was there.

''Q. That is what you were relying upon? A. Yes.''

The witness Frame further testified as to the action of the doors in question, as follows: ''They swing both ways. As to with what force one of the doors will fly back or swing back before it closes, that will depend on the distance you open that door. These hinges have an arrangement on them that you can take the force out of the door with it, and you can also tighten them up, so they will shut with greater force, but, gradually, as they shut, when they come to the center they will ultimately stop; in other words, both barrels of the hinge work as a check, one on the other. The purpose of that check is ultimately to stop it in the center line, in the center, but you can tighten that spring up until it strikes quite a forcible blow. Q. In the condition that the doors are, what condition do they fly shut? A. If they are opened as far as they can open, they will strike about a fifty pound blow.'' He also testified that all of the other theater doors in Butte were equipped with handholds or bars, but it appears from the testimony that all of these doors, although they are swinging doors, only swing one way, whereas the doors in question swing in both directions.

Walter Arnold, an architect of 35 years' experience, testified as follows: "I looked around the city of Butte with an idea of determining places that had doors of similar appearance and operation as these at the American Theater; that is, in and out doors without any handholds, knobs or bars. I found them at the Butte High School, the First Baptist Church, the main entrance to the Metals Bank, the Woolworth store, the U. S. Hotel entrance, on Dakota street, the Leggat Hotel entrance, the Hennessy store storm doors, the Silver Bow Block, the Bakerite Bakery, Creamery Cafe, Green's Cigar Store, and another cigar store at 4 North Main street, a candy store on East Park street, the Moxom Cafe, and the entrance to the Butte Water Company."

The defendant at the close of plaintiff's case in chief moved for a nonsuit, which was denied, and at the close of all of the testimony moved for a directed verdict. In effect, the ground of both motions was that the plaintiff had failed to prove any negligence on the part of the defendant proximately causing the injury of which plaintiff complained. The cause was submitted to the jury and a verdict rendered in favor of plaintiff. Judgment was entered in conformity with the verdict. Motion for new trial was made and denied. The appeal is from the judgment.

The defendant specifies error upon the ruling of the court on these motions, the admission of testimony over objection, refusal of certain offered instructions, and upon the order denying its motion for new trial.

After the witness Frame had testified describing the swinging doors in detail, quoted verbatim supra, counsel for the plaintiff propounded to the witness the following question: "What have you to say as to whether or not the doors in the condition in which you have described them, without any handholds or checking device are reasonably safe for use by the public?" Objection was made upon the ground that the question did not relate to a subject calling for expert testimony and a conclusion to be drawn from the facts. The ob-

jection was overruled, and the witness answered: "They are not safe at all."

In the case of *In re Miller's Estate,* 71 Mont. 330, 229 Pac. 851, 854, it was said: " 'The theory upon which expert testimony is held competent is that there are persons whose knowledge of a science, art or trade being superior to that of the mass of mankind, qualifies them to express an opinion upon any matter pertaining thereto.' (*De Sandro* v. *Missoula Light etc. Co.,* 52 Mont. 333, 338, 157 Pac. 641.) When, however, it can be said as a matter of law that the jurors are equally capable of forming an opinion or can draw, or be readily directed how to draw, a reasonable inference, then the matter is not the subject of expert testimony. (*Coleman* v. *Perry,* 28 Mont. 1, 7, 72 Pac. 42; *Copenhaver* v. *Northern Pacific Ry. Co.,* 42 Mont. 453, 467, 113 Pac. 467; *Westlake* v. *Keating Gold Min. Co.,* 48 Mont. 120, 136, 136 Pac. 38.) In other words, when the conclusions to be drawn from the facts stated are within the range of ordinary training, intelligence, and common observation, expert testimony is not admissible. (*Kelley* v. *John R. Daily Co.,* 56 Mont. 63, 79, 181 Pac. 326; *State* v. *Keeland,* 39 Mont. 506, 516, 104 Pac. 513; 22 C. J. 642.) ' "The necessity for opinion evidence only exists where the facts in controversy are incapable of being detailed and described so as to give the jury an intelligible understanding concerning them; but when the facts are such as can be detailed or described, and the jury are able to understand and draw a correct conclusion from them without such opinion evidence, the necessity for it does not exist." ' (*Cummings* v. *Reins Copper Co.,* 40 Mont. [599] 621, 107 Pac. 904, 912)." What was there said was approved and followed in the case of *Demarais* v. *Johnson,* 90 Mont. 366, 3 Pac. (2d) 283, 77 L. R. A. 553. In *Cummings* v. *Reins Copper Co.,* supra, it was held that to permit a witness to express an opinion to the effect that a rope without a chain attachment was an unsafe appliance in connection with the operation of a mine, was error. The case of *Metz* v. *City of Butte,* 27 Mont. 506, 71 Pac. 761, sus-

tained the action of the trial court in refusing to permit a witness to testify as to whether a sidewalk in a city was reasonably safe for pedestrians.

Clearly, under the decisions to which we have referred, it was error for the trial court to permit the witness Frame to answer the question.

Passing now to the consideration of the court's ruling on the motion for a directed verdict: We approach consideration of this question bearing in mind the rule that the evidence must be viewed from the standpoint most favorable to the plaintiff, and every fact must be deemed proved which the evidence tends to prove, and that no case should ever be withdrawn from the jury when reasonable men might draw different conclusions from the evidence. (*Mellon* v. *Kelly*, 99 Mont. 10, 41 Pac. (2d) 49.)

In the circumstances of this case the law imposed upon the defendant the duty of using ordinary care to have the premises safe, as well as to warn the plaintiff of any hidden or lurking dangers thereon. (*Bennetts* v. *Silver Bow Amusement Co.*, 65 Mont. 340, 211 Pac. 336; *Mellon* v. *Kelly*, supra.) Various photographs of these doors were received in evidence and have been certified to this court as a part of the record. From an inspection of these exhibits, and the description of the doors and their method of operation as detailed in the record, it appears that they were the ordinary type of door which was more or less in common use in the city of Butte as well as elsewhere. While the record discloses that other persons were leaving the theater about the same time, it nowhere disclosed therein that plaintiff was pushed or crowded by anyone in leaving the theater.

In the Massachusetts case of *Smith* v. *Johnson*, 219 Mass. 142, 106 N. E. 604, Ann. Cas. 1916D, 1234, L. R. A. 1915F, 572, where plaintiff was injured by swinging doors located at the entrance to a retail drygoods store, the court said: "We are of opinion that the record discloses no negligence on the part of the defendants. The doors, as described by the testi-

mony and shown by the photographs, were of ordinary construction, and were substantially like those in general and common use for many years in Boston and elsewhere. There was nothing to show that they were not entirely safe when properly used by persons passing through them. If, as the plaintiff's somewhat confused testimony indicates the ordinary speed of the door was increased by another customer negligently pushing in the opposite direction, the defendants are not responsible therefor. And assuming in the plaintiff's favor that there was only the usual recoil of the door, the failure to furnish doorkeepers or attendants in no way contributed to the accident. It appears that there was no pushing or jostling by the crowd of Christmas shoppers. In short, the evidence fails to disclose the breach of any legal duty which the defendants owed to the plaintiff.''

The decided cases from other jurisdictions relating to injuries suffered by persons visiting public places as the result of using swinging doors are uniform in holding that the owner of the property is not liable where the injury is sustained as the result of the sudden movement of other visitors at the public places and the use of the swinging door, as illustrated by the following decisions: *Dolan* v. *Callender etc. Co.,* 26 R. I. 198, 58 Atl. 655, 656; *Pardington* v. *Abraham,* 93 App. Div. 359, 87 N. Y. Supp. 670, affirmed without opinion by the Court of Appeals of New York, 183 N. Y. 553, 76 N. E. 1102; *Mangel* v. *Bronx Borough Bank,* 241 App. Div. 160, 271 N. Y. Supp. 432; *Olson* v. *Whitthorne & Swan,* 203 Cal. 206, 263 Pac. 518, 58 A. L. R. 129.

Courts have held that where two sets of swinging doors are constructed so that when doors from each set are open, one door from each set or pair being opened in the direction of another door from the other set or pair which is opened in the direction of the first door and the two overlap when so opened, then it is a question for the jury as to whether such method of construction is negligence (*Kiernan* v. *Manhattan Ry. Co.,* 27 Misc. 841, 58 N. Y. Supp. 394; *Carr* v. *W. T. Grant Co.,*

188 Minn. 216, 246 N. W. 743); but here the facts are in nowise similar to those involved in the two cases last cited.

It is argued on behalf of the plaintiff that in none of the cases was there any evidence of the want of knobs or handholds, with which we agree; nor was there any evidence in this case that swinging doors of the double-action variety are ordinarily or usually so equipped; in fact, the undisputed evidence is to the contrary. It is further argued that in none of these cases did the door swing or slam back with a fifty-pound blow. It is said that they should be equipped with proper checking devices. The witness Frame, testifying on behalf of the plaintiff, said that both barrels of the hinge work as a check one on the other. The purpose of that check is ultimately to stop it at a center line, but one can tighten that spring up until it strikes quite a forcible blow. He then testified that in the condition the doors were, if they were opened the maximum distance and let shut, they would strike about a fifty-pound blow. The record is barren of any other suggestion as to any additional checking device which might properly be used on these doors. As we understand the record, while the force of the blow might have increased the extent of plaintiff's injury, the force of the blow did not cause her injury, but the location of her hand upon the door did.

In the case of *Dolan* v. *Callender etc. Co.*, supra, it was said: "Such a door, like any other door, may become dangerous when carelessly or improperly used, but the defendant was not called upon to anticipate any such use thereof. And it is perfectly evident that, by the exercise of the most ordinary care in the use thereof by the plaintiff, no injury would have been sustained by her."

On the whole record, plaintiff failed to prove any act of negligence on the part of the defendant proximately causing her injury. The court was in error in denying defendant's motion for a directed verdict.

Accordingly, the judgment is reversed and the cause remanded to the district court of Silver Bow county, with di-

rection to enter judgment of dismissal of plaintiff's complaint on the merits.

ASSOCIATE JUSTICES STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS and MR. JUSTICE MATTHEWS, being absent, did not hear the argument and take no part in the above decision.