# MRS. EUNICE HALL V. MEDICAL BUILDING OF HOUSTON.

No. A-3415. Decided October 1, 1952.
Rehearing overruled October 29, 1952.
(251 S. W., 2d Series, 497.)

*Vinson, Elkins & Weems, Tarlton Morrow, Dyess & Dyess* and *A. D. Dyess,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that the defendant's (Medical Arts Building) motion for peremptory insrtruction was improperly overruled, since, in the minds of said court, there was no evidence that said defendant had breached any duty it owed to plaintiff, and therefore the jury's finding of negligence should not stand. Marshall v. San Jacinto Building Co., 67 S.W. 2d 372; J. Weingarten, Inc., v. Brockman, 134 Texas 451, 135 S.W. 2d 698; F. W. Woolworth Co. v. Ellison, 232 S.W. 2d 857.

*Fulbright, Crooker, Freeman & Bates* and *M. S. McCorquodale,* all of Houston, for respondent.

The Court of Civil Appeals correctly held that since Mrs. Hall was injured as a direct result of the action of a third party in suddenly opening the door in question, and she knew the door was there and realized the hazard of being struck by it, the owner of the building owed no duty to warn her of a condition and hazard which were both known and obvious to her. Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas 60, 41 S.W. 62; Houston Natl. Bank v. Adair, 146 Texas 387, 207 S.W. 2d 374; Renfro Drug Co. v. Lewis, 149 Texas 507, 235 S.W. 2d 609.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

Petitioner, Mrs. Eunice Hall, recovered judgment in the dis-

trict court for $22,000 on account of injuries suffered by her when she was struck by a door opening into the lobby of the Medical Arts Building, an office building owned and operated by respondent, Medical Building of Houston. The Court of Civil Appeals reversed that judgment and rendered judgment that the petitioner take nothing by her suit, holding that there is no evidence in the record to support the jury's findings of negligence and proximate cause. 243 S. W. 2d 409.

On respondent's appeal to the Court of Civil Appeals, the only points of error presented by it were that the trial court erred in overruling its motion for peremptory instruction, and erred in overruling its motion for judgment non obstante veredicto. The application for writ of error was granted on petitioner's point which assigns error in the holding of the Court of Civil Appeals that respondent's motion for peremptory instruction was improperly overruled.

1 Stated generally, the position taken by petitioner is that there is evidence supporting the jury's findings of negligence and proximate cause so that the case presented in the trial court was one of fact for the jury's determination, while respondent contends that there is no evidence to support the jury's findings. The task therefore given to this Court, as in many other cases, is to examine and consider all of the evidence bearing on the controlling issues, and having done so to decide whether there is evidence of probative value to support the answers made by the jury to the issues.

Evidence in the record shows the following facts about the building, its occupancy and use, and particularly about the lobby and the door which petitioner testified struck her on July 13, 1948, and about petitioner's employment in the building and her knowledge of the building, the lobby and the door.

The building is a large office building of sixteen floors and basement. It has 250 rent-paying tenants, most of them being of the medical profession. There are about 800 people in the building, 300 men an approximately 500 nurses. Many sick and crippled persons enter and leave the building. There are four elevators that are entered from the north side of the lobby. They have a capacity of 17 passengers each. The manager of the building expressed the opinion that the lobby perhaps receives and dispatches more persons in a day than the lobby of any like size building in the city. He testified that quite often every elevator

was busy and full and that sometimes there were many more standing in the lobby than were already in the elevators.

In the north wall of the lobby and just west of the elevators is a door described in the record as "door A," opening into a corridor that leads to two doctors' offices fronting on the street north of the building, a barber shop, other shops and rest rooms. Much of the west part of the ground floor is occupied by a drugstore which has an entrance from the lobby. A stairway leading from the ground floor to the second floor of the building is enclosed by the west wall of the lobby, with access through a door in that wall. The door is described in the record as "door B." Before renovation of the building in 1948 there was no door and no wall separating the lobby from the stair hall. The wall was built and the door was hung "mainly to control the air conditioning" at the time when the building was renovated. And according to the testimony of the building manager the door was hung in the latter part of April, or possibly in May, 1948. The door is a "hollow metal door" weighing about 225 pounds. It opens into the lobby, swinging toward the north. It has a door check that was put on it when the door was hung and has since been there. The check is a compression check that can be adjusted to exert more or less pressure when the door is opened. Its adjustment is a simple process. The manager of the building testified that the door check was a good one and was in good working condition on July 13, 1948. The door was taken off and with the door check on it was set up in the court room for the trial. The building manager while testifying examined the door to ascertain what pressure was exerted by the door check on opening the door, and testified that it was working normally and at about the same normal pressure that it had on the day when petitioner was injured. Two witnesses for petitioner testified that they went to the door immediately or a short time after petitioner was struck, examined it, and found that it opened freely, more freely than when they tested it as set up in the court room at the trial.

On the second floor of the building there were two laboratories, a surgical and dental supply company, an X-ray sales room and the building manager's office. The manager of the building testified that the stairway was used "a great deal" by tenants on the lower floors and by some of the patients, that he knew there were numerous persons going up and down the stairs and opening the door in the lobby, that he himself used the stairs and the door about twenty times a day, that delivery boys came

down the stairs from the laboratories and the supply company, and that sometimes the boys hurried down the stairs.

It is further shown by the testimony of the manager of the building that about a month before the time when petitioner was injured he, the manager, suddenly opened the door at the foot of the stairs and the knob of the door struck on the arm of a maid employed by Dr. Prince, who was a tenant and petitioner's employer. At another time prior to petitioner's injury the building manager in opening the door almost struck Dr. Prince as he entered the lobby from the corridor, and Dr. Prince stopped and told the manager that the door struck him. After these incidents nothing was done "to correct the situation." The building manager testified that it would have been practicable to place a warning sign on the inside of the door and to place a guard rail to keep persons in the lobby from being struck by the door. The hinges of this door described as "door B," which when opened swings toward the north, are at a distance of about three feet from the door in the north wall of the lobby described as "door A," so that persons entering the lobby through "door A" and going straight toward the front of the building would step almost immediately into the path of "door B" when opened.

Portions of ordinances of the City of Houston provide: that stairways in office buildings be enclosed; that the stairways be protected by hollow metal doors which swing in the direction of exit travel, except that sliding doors may be used if approved by the building inspector; and that the doors shall be self-closing and normally kept closed, and shall be so arranged as to be readily opened.

Petitioner Mrs. Hall was head nurse and office manager of Dr. Prince, having been employed by him from 1941 to the time of her injury on July 13, 1948. While she was thus employed she went many times from Dr. Prince's office through the corridor and into the lobby and to the drugstore or up the stairs to procure supplies. She used the corridor and the entrance through "door A." many times after the partition was built and the door at the foot of the stairs hung in April or May, 1948, but she testified that she had not gone up the sairs after the door was hung, that she knew the door had been installed, but had never used it, had never seen it opening, had never seen others using it, and did not know whether it opened into the lobby or into the stairway.

On the day she was struck by the door petitioner was going from Dr. Prince's office through the corridor and into the lobby in order to procure from the drugstore medicine for a patient. She testified that when she stepped into the lobby she found that it was crowded with people waiting for the elevators, and she had to push her way through; that she was crowded toward the west wall and as struck by "door B" when it was opened with force, and knocked through a line of people, and that the door struck her hip, shoulder and head. She testified to a vague recollection that the door was opened by a "blond boy," who went on out of the building. A witness for respondent testified that the door was opened by one of the boys who worked for the supply company on the second floor.

In answer to special issues the jury found respondent negligent on three grounds proximately causing the injuries sustained by petitioner: (1) In failing to provide "door B" with a door check mechanism set with greater pressure to resist opening (2) in failing to provide a guard rail erected around the opening of "door B" into the lobby; and (3) in placing a swinging door at the location of "door B."

2   There is no uncertainty as to the established principles applicable to a case of this kind. The difficulty is in their application to the peculiar facts of the case. In Renfro Drug Company v. Lewis, 149 Texas 507, 516, 235 S. W. 2d 609, it is said that the owner or occupant of the premises owes to an invitee or business visitor the duty to use reasonable care to keep the premises in a reasonably safe condition so that he will not be injured. See also Carlisle v. J. Weingarten, Inc., 137 Texas 220, 152 S. W. 2d 1073; Kallum v. Wheeler, 129 Texas 74, 101 S. W. 2d 225; Walgreen Texas Company v. Shivers, 137 Texas 493, 154 S. W. 2d 625; Blanks v. Southland Hotel, Inc., 149 Texas 139, 229 S. W. 2d 357; Restatement of the Law of Torts, Vol. 2, Sec. 343, pp. 938-944; 38 Amer. Jur., pp. 754-757, Sec. 96; 65 C.J.S. pp. 521-532, Sec. 45.

The principle as generally stated is qualified by the rule that the owner or occupant of the premises does not owe to the business invitee the duty to protect him against dangerous conditions "that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant." 38 Amer. Jur., pp. 757-758, Sec. 97; see also Houston National Bank v. Adair, 146 Texas 387, 390, 207 S. W. 2d 374; A. C. Burton Co. Inc. v. Stasny, 223 S. W. 2d 310, application for writ of

error refused; Marshall v San Jacinto Building, Inc., 67 S. W. 2d 372, application for writ of error refused; 65 C.J.S. pp. 541-545, Sec. 50. It has been said that "the basis of the invitee's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger." 65 C.J.S. p. 543, Sec. 50. And many cases have held that the owner or possessor is not liable for the injury to the invitee because the danger was as well known and obvious to the one as to the other. Beeville Cotton Oil Co. v. Sells, 84 S. W. 2d 575; Ray v. St. Louis Southwestern Ry. Co., 289 S. W. 1030, application for writ of error refused; Hodges v. Nix, 225 S. W. 2d 576, and the cases last above cited.

The opinion of the Court of Civil Appeals discusses at length cases in which the decision was influenced by proof that the danger was open and obvious, and bases the decision primarily on the conclusion that the petitioner was familiar with the stairway, the lobby and the conditions surrounding them. That court also expresses the opinion that the jury's findings of negligence and proximate cause are without evidence to support them.

3  It is our opinion, after careful consideration of the entire record, and particularly of the evidence the substance of which has been stated herein, that the material findings of the jury on which the trial court's judgment is based are supported by evidence.

It is necessary, in determining whether there is evidence proving or tending to prove that respondent owed a duty to petitioner and that it negligently failed to perform that duty, with injury to petitioner proximately caused by its failure, to look to the facts in evidence concerning the lobby, the stairway, the door, their use and the conditions surrounding them. The case is not one of open and obvious danger in using or passing by an ordinary door.

The evidence, we believe, clearly shows that the door as constructed, maintained and used created a dangerous condition. The principal controversy is as to the question whether the danger was open and obvious. There is evidence that the lobby was very often crowded with persons coming and going and waiting for the elevators; evidence that the heavy metal door described as "door B" opened into the lobby and at the time when petitioner was injured swung open freely; evidence that the door

was only three feet from the door described as "door A" leading from the corridor, and that "door B" opened toward "door A," so that persons entering the lobby from "door A" would step almost immediately into the path of "door B"; evidence that many persons used the corridor and "door A" to enter the lobby; evidence that many persons used the stairway and "door B" in going to and from the second floor; evidence that, within the knowledge of the manager of the building, delivery boys from the laboratories and the supply company on the second floor used the stairway and that sometimes the boys hurried down the stairs; and evidence that about a month before the time when petitioner was injured the manager of the building in using "door B" struck a maid who was employed in the building, and on another occasion almost struck a doctor, one of the tenants, and that nothing was done "to correct the situation." This evidence proves, or at least tends to prove, that a dangerous condition was created by the construction and maintenance of the door which opened freely into the lobby, and consequently respondent owed to petitioner and others using the lobby as invitees the duty to use reasonable care to protect them from the danger.

4 Was the danger open and obvious to petitioner? She had been employed in the building for seven years, was familiar with the lobby and its use, had used the stairs many times and knew that the partition had been built and the door placed in it at the foot of the stairs. She testified, however, that she had never used the door, had never seen it open, had not seen others using it, and did not know whether it opened into the lobby or into the stairway. There is no evidence that she knew that the door would swing freely or that it was not retarded by a properly adjusted door check. She was without knowledge of the dangerous condition which was found to be a cause of her injuries, and with respect to which the jury found respondent was negligent, that is, the free swing of the door on account of respondent's failure to provide the door with a door check set with greater pressure to resist opening. The evidence that has been set out at least tends to prove that the proprietor's knowledge of the danger was superior to that of petitioner.

In Renfro Drug Company v. Lewis, 149 Texas 507, 235 S. W. 2d 609, the plaintiff was injured when he went through a door opening from a garage into a drugstore. The door as observed from the garage was an ordinary solid metal door, and from the viewpoint of the plaintiff, who had not theretofore used the

door, the danger was only the open and obvious danger of passing through an ordinary door. However, there were conditions unknown to the plaintiff, in that the door opened immediately upon an abrupt step-down and over a step that had become worn, slick and uneven and sloped downward. Judgment for the plaintiff was affirmed on the implied finding of negligence in permitting these dangerous conditions to exist. That case is like this case in the existence of danger unknow to the plaintiff.

The opinion of the Court of Civil Appeals and respondent cite Houston National Bank v. Adair, 146 Texas 387, 207 S. W. 2d 374, in which the trial court's judgment for the defendant on instructed verdict was affirmed. In that case, however, the plaintiff, having used the stairs many times, had ample opportunity to observe their condition, which was as easily perceptible to her as to the bank or its employees, and there was no evidence that other persons had fallen on the stairs.

There are many cases in which an invitee has been struck and injured by a revolving or swinging door violently or suddenly moved by another invitee. In many of them liability was denied because the door was an ordinary door in general use, the danger incident to using it being open and obvious, and there being no evidence of any defect in the construction or condition of the door. See Sheridan v. Great Atlantic & Pacific Tea Co., 353 Pa. 11, 44 Atl. 2d 280, 162 A.L.R. 946; Dolan v. Callender, etc. Co., 26 R. I. 198, 58 Atl 655; Callaghan v. R.H. White Co., 303 Mass. 413, 22 N.E. 2d 10; Sterns v. Highland Hotel Co., 307 Mass. 90, 29 N. E. 2d 721; Mangel v. Bronx Borough Bank, 241 App. Div. 160, 271 N.Y.S. 432; Leybold v. Fox Butte Theater Corp., 103 Mont. 232, 62 Pac. 2d 223; Wiedanz v. May Department Stores Co., (Mo. App.) 156 S. W. 2d 44.

5  On the other hand, it has been held in a number of cases that questions of fact as to the proprietor's negligence and as to proximate cause are raised where there is evidence that the braking device or friction strips on the door that struck the plaintiff were out of adjustment or worn so as to permit the door to revolve at a speed that created unusual danger, or the door was permitted to become defective or was so placed that the invitee would be in danger of being struck by it when pushed open by one who was not an agent or employee of the proprietor. Hochschild v. Cecil, 131 Md. 70, 101 Atl. 700; Raga v. S. S. Kresge Co., 274 App. Div. 966, 84 N.Y.S. 2d 776; Sorenson v. Emery, etc. Dry Goods Co. 238 Mo. App. 1241, 187 2d

480; Nersiff v. Worcester County Institution, etc., 264 Mass. 228, 162 N.E. 349; Promisel v. Hotels Statler Corp., 286 Mass. 15, 189 N.E. 804; Dolan v. Growers Outlet, Inc., 129 Conn. 158, 26 Atl. 2d 788; Campbell v. Hughes Provision Co., 153 Ohio St. 9, 90 N. E. 2d 694; Zeder v. Church of St. Stanislaus, 275 App. Div. 796, 88 N.Y.S. 2d 617. The instant case is within the rule of the decisions last cited.

Respondent's brief contains these further contentions: there is no evidence that the door was opened with force; no evidence that a slight increase in the pressure of the door check would have prevented the injury, and hence no evidence of negligence on the part of respondent or of proximate cause; and because the city ordinance required that the door be "so arranged as to be readily opened" the pressure of the door check could not have been materially increased without violating the ordinance.

These contentions cannot be sustained. Petitioner's testimony that the door struck her so violently as to knock her through a line of people in the lobby tends to prove that the door was opened with force. And she testified that the door came out with force. While no witness testified that increasing the pressure of the door check would have prevented petitioner's injuries, common knowledge indicates that a reasonable increasing of the pressure would have prevented, or in all probability would have prevented, the sudden and violent opening of the door. There is evidence that the door check exerts pressure to retard the opening of the door, and that the pressure, the extent of it, may be readily adjusted. There is evidence that at the time petitioner was injured the door opened or swung freely, more freely than it did as set up in the court room at the trial. The jury could reasonably infer from the evidence that had the door check been adjusted with a reasonable amount of pressure to retard it, it would not have been thrust open violently and would not have injured petitioner.

The requirement in the ordinance that the door "be so arranged as to be readily opened" apparently was intended to assure free access to the lobby in case of a fire. The door check could readily have been adjusted to a reasonable amount of pressure and the door reasonably retarded to prevent its sudden and violent opening and at the same time the door could have been readily opened. Reasonably retarding the opening of the door for the safety of those in the lobby would not prevent its ready opening for access from the stairway to the lobby.

Petitioner presents a point complaining of the trial court's refusal to render judgment for an additional sum of $1000.00 as damages awarded by the jury for future expenses, including medical, surgical, hospital and nursing care. It is our opinion, after examining the evidence relied upon by petitioner, that there is no evidence in the record of a reasonable probability that such expenses will be incurred.

The judgment of the Court of Civil Appeals is reversed and the judgment of the District Court is affirmed.

Opinion delivered October 1, 1952.

Rehearing overruled October 29, 1952.