Ralph M. ALLRED, Appellant,

v.

KIMA FERTILIZER, INC., Appellee.

No. 7576.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 21, 1966.

Clayton, Kolander, Moser & Templeton, Amarillo, for appellant.

Culton, Morgan, Britain & White, Amarillo, for appellee.

CHAPMAN, Justice.

This is an appeal from a judgment against Ralph M. Allred summarily rendered for Kima Fertilizer, Inc., upon its motion, pleadings and an affidavit filed by its 26-year old manager, Tommy Womack.

The parties will be referred to as they were in the court below.

■ In their pleadings the parties have raised that phase of assumed risk which falls in the category known as the "no duty" cases, applicable to occupier-invitee situations. The other Texas concept of assumed risk, volenti, was not pleaded. The latter concept being an affirmative defense [1] and not raised by the pleadings of defendant below, we believe it is unnecessary for us to discuss it.

■ This being a summary judgment case, the first rules we must apply are (1) that the court hearing the motion must not weigh the evidence or determine the credibility of affiants and deponents; and (2) he must accept as true all evidence of the party opposing the motion which tends to support such party's contention, and give him the benefit of every reasonable inference which properly can be drawn in favor of his position. Gulbenkian v. Penn, 151

1. Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368; "Assumption of Risk," by Honorable Joe Greenhill, Justice, Supreme Court of Texas, Texas Bar Journal, Vol. 28, No. 1, p. 21, January 22, 1965.

Tex. 412, 252 S.W.2d 929. These rules must be kept in mind as we consider the summary judgment evidence upon which the court summarily rendered its judgment.

At about 9:30 a. m., April 4, 1964, the plaintiff drove his station wagon up next to defendant's white pickup truck parked just south of the door of a small, white building used as an office by defendant in Wildorado, Texas. It was a cold, windy, somewhat dusty spring morning. He was driving west and defendant's pickup truck was facing the same direction. His deposition testimony shows that he drove up to the south of the truck within about three feet of it with the back end of his station wagon even with the window and cab of defendant's pickup truck. He got out "in a hurry," walked around the back of his machine because that was the nearest to the cab of the pickup in which Tommy Womack was sitting. He also stated in the deposition that the back of his station wagon was even with the glass in the cab of the pickup. As he approached the cab Tommy rolled the glass to the door down and told him he was "going right up here and *weigh this pickup* and will be back in a minute." (Emphasis ours).

There were two cars parked in the direction the pickup needed to be driven in order to get to the scales, so Tommy asked Mr. Allred if he thought there was sufficient room for him to go through the space between the cars. Mr. Allred told him there was about six inches clearance on that side between the cars ahead of him and then Tommy " * * * asked me to direct him through this traffic."

"Well, he went on about this time, of course, the pickup passed and I just still watching him going through here, I just stepped in behind him."

Appellant continued in his deposition to say that after Tommy had asked his advice as to whether he had room to go between the two parked cars he guided him through, still looking forward in the direction the pickup was moving. Then as the pickup passed he stepped in behind it on the way to the door of the little white office. Just as he stepped in behind the pickup a fertilizer trailer loaded with 7,000 pounds of fertilizer, which he did not know was attached to it, hit him.

"Q. Which way were you looking as you walked toward the building?

A. I was looking, guarding him on through there.

Q. In other words, at the time you started walking towards the building you were still looking towards the west and not towards the building.

A. That's right. But I had my hand on the back of the pickup when it went by."

The trailer was right in plaintiff's face before he saw it. He was knocked down, dragged several feet, his trousers practically stripped off, the ligaments in his right knee were torn and a bone broken in his right ankle.

It is unquestioned in the record that we have an occupier-invitee situation because Mr. Allred was a customer of defendant and was on the way to its office at the time to see about purchasing some fertilizer, the merchandising of which was defendant's business. Plaintiff pleaded defendant owed him certain duties and failure to fulfill those duties constituted negligence (1) in failing to warn him that a fertilizer tank was hooked to the pickup; (2) in failing to stop the pickup when he started to walk behind it to his right; and (3) in failing to keep a proper lookout for the plaintiff as he started behind the pickup. Defendant pleaded the fact that the fertilizer trailer was hitched or connected to the company pickup or the fact that said trailer was being pulled forward by the pickup were matters which were open and obvious and that defendant or its employee owed plaintiff no duty to do or refrain from doing any of the acts or failure to act alleged against it. The court found in its judgment that

the pleadings and other summary judgment components; i. e., affidavit and deposition, show an absence of any genuine issue of any material fact. We do not agree.

Mr. Allred's deposition was taken by defendant. He stated that at the time he drove up to the grounds of defendant its white pickup was parked right next to the south door of the little white office building; another pickup parked on the grounds nearby was white; and about fifteen fertilizer trailers just like the one he later learned was hitched to the pickup were parked side by side "just as close as you can put them." When asked if he saw the tank hooked to the trailer, he replied: "No, I didn't notice it because I was—all of the other tanks was right beside it, and it was right, almost against them."

We do not propose in this opinion to trace the history of the doctrine of assumed risk or its concept relating to "no duty." That was done most capably by Justice Greenhill of our Supreme Court who authored the Halepeska opinion. That opinion, and subsequent articles by Justice Greenhill in the Baylor Law Review [2] and the Texas Bar Journal [3] pointed up the several variances that have existed in opinions through the years by their Court in cases involving the doctrine of assumed risk in Texas and some material changes the Court has made from earlier pronouncements.

This case has one facet different to the many cases reviewed in Halepeska and the articles mentioned and that is the fact that defendant's manager diverted the attention of plaintiff from the very condition that caused his injury. That was the hitch that showed the fertilizer tank to be attached to the trailer.

It must be kept in mind that Mr. Allred said he never saw the tank hitched to the pickup. That is a positive statement sworn to as part of the summary judgment evidence. In the Texas Bar Journal heretofore cited Justice Greenhill said: "What the Supreme Court did in the recent Halepeska case was to be more certain that the plaintiff *did* know of the danger and *did* appreciate the risk." He also said in the same paragraph that the court narrowed the factual inquiries to knowledge and appreciation of the danger as distinguished from "should have known and appreciated."

In Halepeska the Court held that the standard to be applied is a subjective one. Then in the Bar Journal article heretofore cited Justice Greenhill stated:

"The question of whether a plaintiff knows of the condition, and knows of and appreciates the danger are subjective ones. Did this particular plaintiff know? Did *he* appreciate? He may say, and probably will say, that he did not know or appreciate. Dean Page Keeton objects to this subjective test because of the great temptation for the plaintiff to not tell the truth. But it is for the jury to pass on the truth of his statement, just as it is as to the defendant's testimony in discovered peril cases."

In the same periodical from which we have just quoted Justice Greenhill also said: "The age, experience, mental capacity of the person warned, and other facts are relevant." The plaintiff here was 76 years of age. Since he got out of his machine and passed to the back of it on the way to the cab, which he said was even with it, we can see no particular reason, in view of the situation on the grounds heretofore described, as to why his attention would have been called to the trailer hitch. Even if he saw the hitch, which he denied, we do

2. Baylor Law Review, Vol. 16, p. 111 through 128.
3. Texas Bar Journal, Vol. 28, No. 1, beginning p. 21, January 22, 1965.

These two articles are identical but carried on different dates in the named periodicals.

not believe he was required as a matter of law to know it was fastened to the back of the pickup. Anyone who has ever pulled trailers knows that people often unfasten the contraptions that seal the hitch to the pickup without shoving the propelling vehicle and trailer apart. Then when the pickup is driven forward the trailer extension that fastens itself to the pickup falls to the ground. We believe it is important that Tommy Womack told Mr. Allred he was going to weigh the pickup. There was never any suggestion that he was going to weigh the fertilizer tank. In quoting Justice Greenhill again from the Baylor Law Review and Texas Bar Journal supra, he stated: "My understanding of assumed risk is that the plaintiff is to be charged with knowledge only where the danger is patently obvious as a matter of law; i. e., so plain that 'any fool could plainly see.'" This record does not show the danger that plainly.

In Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497 our Supreme Court speaking through Justice Smedley held that the basis for liability in the "no duty" case is the superior knowledge of the danger on the part of the occupier. It certainly cannot be said in this case that as a matter of law Tommy Womack did not have superior knowledge to that of Mr. Allred concerning the dangerous condition that led to plaintiff's injuries.

One of the latest expressions from our Supreme Court on the question is Hernandez v. Heldenfels, Tex., 374 S.W.2d 196 in which the court "* * * further limited the 'no duty' assumed risk cases by narrowing the *activities* (as contrasted with static conditions) to those which, generally speaking, are rigidly circumscribed and easily predictable." [4] Justice Greenhill, Texas Bar Journal, supra. Generally speaking, the

cases before Hernandez were predominantly of static conditions.

If the Supreme Court would care to further elaborate on the "no duty" concept of assumed risk this case projects a new facet on which to do so; i. e., the effect of a diversion of an invitee by the occupier from the dangerous instrumentality or activity. Other than what we have already said, this writer is happy to leave that question to those more erudite on the subject.

 When the rules established by the Court to this date are applied to the facts of this case, we feel compelled to hold that the record does not as a matter of law fail to negative the "no duty" concept of assumed risk.

Accordingly, the judgment of the trial court is reversed and remanded for a trial on the merits.

---

4. An example of such activities; i. e., rigidly circumstanced action, is found in McElhenny v. Thielepape, 155 Tex. 319, 285 S.W.2d 940, wherein plaintiff had watched a fixed rocking chair or glider in a doctor's office being used by children for an hour and then when she got up, tripped over it. She had observed it moving back and forth about six inches. The Court held as a matter of law that the activity was open and obvious.