WEST, RESPONDENT, *v.* WILSON, APPELLANT.

(No. 6,812.)

(Submitted October 8, 1931. Decided October 29, 1931.)

[4 Pac. (2d) 469.]

*Mr. Lewis A. Smith,* for Appellant, submitted a brief and argued the cause orally.

*Mr. William B. Frame* and *Mr. M. J. Doepker,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

On the evening of September 11, 1927, plaintiff, with her husband, daughter, and little son were returning to Butte in

an automobile after a day spent in fishing at Georgetown Lake. All went well until they reached the Hump, a well-known hill on the road between Anaconda and Butte, where, upon going up the incline, the car ceased to run. Mr. West, plaintiff's husband, who was driving, ran it to the right side of the road and upon examination found a shortage of gasoline. The feed line had become loose from the carburetor. At this time Mr. Clark, whom West had seen at the lake, went by, and West accosted him, saying he was out of gas. Mr. Clark offered to supply the gasoline, and Mr. West and his daughter went to the Clark car parked about 100 feet distant to get it. Plaintiff remained in the front seat of the West car. The boy was asleep on the back seat. It was 9 o'clock in the evening and bright moonlight. At this juncture defendant, driving a Cadillac car, ran into the West car, the impact throwing plaintiff forward and injuring her. Some time thereafter plaintiff sued defendant for damages sustained as a result of the collision.

In her second amended complaint she alleged that the accident was caused by defendant's negligence, which she stated as follows: "That the said defendant carelessly and negligently failed and neglected to keep a lookout for vehicles stopped on the right-hand side of said highway, having regard to the width thereof and the use and traffic thereon, and in utter disregard of the safety of the lives and property of other persons on said public highway, in this, to-wit: that he failed and neglected to have the windshield of his said automobile clear and clean of dust, dirt, grit, mud and grease, and by reason thereof the view of said defendant was obscured. * * * "

The trial judge was of the opinion that by the language following "to-wit" plaintiff narrowed her allegation charging negligence to the alleged condition of the windshield. Plaintiff's counsel contend that in this construction the court erred, but we agree with his Honor. Plaintiff particularized; she charged defendant with negligence for failing to keep a lookout in that he failed and neglected to have his windshield

"clear and clean of dust, dirt, grit, mud and grease, and by reason thereof the view of said defendant was obscured."

"The plaintiff may, if he so elects, narrow the issues to a single act of negligence; but, having done so, he must be confined in his proof to such act." (*Flaherty* v. *Butte Elec. Ry. Co.*, 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416, 419.) "The plaintiff is limited to the particular act of negligence charged." (*Hunt* v. *White Sulphur Springs etc. Ry. Co.*, 63 Mont. 508, 208 Pac. 917, 919.) "He cannot * * * assert a right to go without the lines within which he voluntarily confined himself." (*Aikens* v. *Frank*, 21 Mont. 192, 53 Pac. 538, 540; *Pierce* v. *Great Falls & Canada Ry. Co.*, 22 Mont. 445, 56 Pac. 867.) "If this were not so, the very purpose of pleadings would be destroyed, and, instead of the complaint apprising the defendant of the proof which he would be called upon to meet, it would become a device to entrap him." (*Kakos* v. *Byram*, 88 Mont. 309, 292 Pac. 909, 911; *Flaherty* v. *Butte Elec. Ry. Co.*, supra.)

After his demurrer to plaintiff's second amended complaint was overruled, defendant interposed an answer consisting of general denials and two affirmative defenses. One of these is to the effect that plaintiff's car was improperly parked, and that it obstructed the usual and ordinary traffic on the highway, and the other is that the plaintiff did not carry or have burning a tail-light as the statute requires. Plaintiff denied the affirmative defenses by reply.

Defendant's counsel argues that there is not any substantial evidence to prove that defendant's visibility was in anywise obscured by the condition of the windshield, and to this we agree. Mr. West testified that defendant's windshield "looked like it had been wet and dust got on it." Whether the dust was heavy or light he did not say. He did not say it covered the entire windshield, particularly that in front of the driver. He did not say from any examination made by him that the dust was dense enough to obscure the driver's vision to any extent whatever. He did not attempt to look through the windshield from the driver's side; he saw it from

the front, not the rear, and in the moonlight. West said he had a conversation with Mr. Carmichael who had been sitting at defendant's right when the collision occurred. Several were then gathered about the cars. Defendant was about six feet distant from West and Carmichael; he was asserting that the West car had not displayed a tail-light. Carmichael, West testified, said he could not see any lights on West's car "because the windshield was too dirty." Carmichael did not say anything as to what defendant could or could not see. He referred to himself only. The only other witness for plaintiff on this point was her daughter, who said defendant's windshield was dirty. When asked what she meant by that, she said it "had been spotted with rain and dust covered." Whether this referred to the entire windshield, and included that before the driver's eyes, she did not say. No other witness for plaintiff gave any evidence on this point. Mr. Clark, who examined the two cars and the situation carefully, did not say anything about the windshield. The fact is, according to the record, the subject of contention was whether the West car had a tail-light burning, and upon this feature of the case the evidence is in hopeless conflict.

The mere fact that dust is observable upon the windshield of a car is not evidence of negligence on the part of the driver. If it were, few would be free from fault even on paved roads, and all would be guilty on gravel or dirt roads. Doubtless if one permits his windshield to become so covered with "dust, dirt, grit, mud and grease" as to obscure his vision so that he cannot readily perceive the condition of the road and objects thereon, he is negligent.

Plaintiff's proof fell far short of her allegations. Upon the vital point, that the windshield was so dirty that it obscured the driver's vision, there is no proof whatever. If it were dirty on Carmichael's side, it did not follow necessarily that the driver's side was dirty likewise, and there is no proof that it was. On this point proof was required; neither conjecture, speculation, nor unwarranted inferences can take its place. " 'Competent evidence must be produced of all facts

necessary to a recovery, upon which the jury can base a reasonably reliable conclusion; nothing can be left to mere conjecture.' (*Watson* v. *Colusa-Parrot Co.*, 31 Mont. 513, 79 Pac. 14; *Raas* v. *Sharp*, 46 Mont. 474, 128 Pac. 594.)'' (*Flynn* v. *Poindexter & Orr Livestock Co.*, 63 Mont. 337, 207 Pac. 341, 348.)

Whether there is any substantial evidence in the case made by the party upon whom the burden rests is always a question of law, as Mr. Chief Justice Brantly said in *Escallier* v. *Great Northern Ry. Co.*, 46 Mont. 238, Ann. Cas. 1914B, 468, 127 Pac. 458, 462. In his opinion the learned jurist quoted from *Connor* v. *Giles*, 76 Me. 132, the following: ''The old rule that a case must go to the jury if there is a scintilla of evidence has been almost everywhere exploded. There is no object in permitting a jury to find a verdict which a court would set aside as often as found. The better and improved rule is; not to see whether there is any evidence, a scintilla, a crumb, dust on the scales, but whether there is any upon which a jury can, in any justifiable view, find for the party producing it, upon whom the burden of proof is imposed.'' When we come to consider whether there is substantial evidence to warrant the verdict, we find practically no ''dust on the scales'' in favor of plaintiff.

Insufficiency of the evidence is a ground for a new trial (section 9397, subd. 6, Rev. Codes 1921), ''and in passing upon the motion it is the duty of the trial court to weigh the evidence, and, if it is not sufficient to sustain the verdict, a new trial should be ordered (*Mullen* v. *City of Butte*, 37 Mont. 183, 95 Pac. 597), and, if it is not, the appellate court must then determine whether there is substantial evidence to warrant the verdict and will not abdicate its authority in favor of the jury's findings. Jurors are subject to the ordinary infirmities of human nature, and cases are sometimes presented wherein justice would be denied if the courts failed to interfere.'' (*Casey* v. *Northern Pac. Ry. Co.*, 60 Mont. 56, 198 Pac. 141, 145.)

The court permitted, over defendant's objections, what purported to be an X-ray photograph of plaintiff's body to be introduced in evidence. This was taken two and a half years after the accident. Defendant's counsel insists that the evidence did not show that the picture had been properly taken or that it was taken "with a proper or a trustworthy machine, or that it truly represented the body that it was supposed to depict." Defendant's objections were good and should have been sustained.

The only testimony in support of the offered exhibit was that of Peter Holm, who said he was a chiropractor and that he had frequently taken X-ray pictures. He had been practicing his profession for the last fifteen years. "During the last few days I took an X-ray picture of Mrs. West. The X-ray picture which you have in your hand, and which is marked by the stenographer Plaintiff's Exhibit A for identification, is the negative of the picture I took. Since taking that picture; I have had it in my possession about forty-eight hours. I parted with it yesterday when I gave it to you. An examination of the picture shows that it is in every way in the same condition as it was when it left my hands, no doubt about that. I made no other examination of the picture other than to take it; that is all I did."

With respect to the competency of photographs taken by the X-ray process, this court said in *Stokes* v. *Long,* 52 Mont. 470, 159 Pac. 28, 33: "If * * * it appears from the testimony of the person who took the picture that he possesses the knowledge, skill, and experience necessary to enable him to take such pictures accurately, and that the one in question is a fair representation of the situation or condition which is the subject of inquiry, it becomes competent to show that condition. In this case, the witnesses who took the plates were both practicing physicians. Upon being questioned, they showed that they understood, and were accustomed to the use of, the process in their practice and possessed the required skill and knowledge to enable them to use it with accurate results."

"Whether or not the X-ray plate truly depicts what is not discernible to the eye, depends in a large measure upon the correctness of the process and instruments used in making the plates. To justify the admission of such plates, there must be testimony of the trustworthiness of the process and instruments used to such an extent as to apprise the court that the method used to obtain the plates was one generally recognized as trustworthy. There must also be testimony that the plates depict the condition of the body, or the part of the body, of the person purporting to be the subject of the X-ray plates. In the present case no evidence of this kind was offered." (*Joy* v. *Flax*, 101 N. J. L. 43, 127 Atl. 596, 597; and see *Ligon* v. *Allen*, 157 Ky. 101, 51 L. R. A. (n. s.) 842, 162 S. W. 536.)

The judgment is reversed and the cause remanded to the district court of Silver Bow county, with direction to grant the defendant a new trial.

ASSOCIATE JUSTICES GALEN, FORD, ANGSTMAN and MATTHEWS concur.