ARROW AGENCY, a Corporation, Plaintiff and Respond-
ent, v. EMELIA ANDERSON, Defendant and Appellant.
No. 9925.
Submitted December 14, 1959. Decided June 17, 1960.
355 P. 2d 929.

Ralph J. Anderson and Stanley P. Sorenson, Helena, for appellant.

Ralph J. Anderson argued orally for appellant.

Dirk H. Larsen, McCabe, McCabe & Bretz, Great Falls, for respondent.

E. J. McCabe, Jr. argued orally for respondent.

MR. JUSTICE ANGSTMAN delivered the Opinion of the Court.

This is an appeal by defendant from a judgment entered upon a jury verdict in favor of the plaintiff in an action involving payment for services by an attorney.

In its complaint, plaintiff alleged that it was a corporation, and that one E. J. McCabe, Sr., was an attorney-at-law duly licensed and admitted to practice in the State of Montana, with offices at Great Falls; that on or about January 28, 1946, Mc-

Cabe and defendant entered into an oral agreement whereby McCabe was employed as a consultant and advisor on legal questions and business affairs in connection with various matters with which defendant was then concerned; that defendant informed McCabe at that time that she was without funds, and it would be impossible for her to pay for the services to be rendered by McCabe until she had received sufficient funds from litigation in which she was interested or engaged; that McCabe agreed he would fix his charge for services after they were furnished, and in no event until defendant had informed him that she had been successful in some or all of the litigation in which defendant was interested, and at such time McCabe and defendant would confer as to the amount to be paid for such services, and in the event the litigation was unsuccessful McCabe would make no charge for his services.

The complaint further alleged that McCabe rendered services as consultant and advisor and paid out money as attorney for the defendant from January 28, 1946, to on or about January 30, 1951, at defendant's request and under the terms agreed upon between them as heretofore stated; that defendant informed McCabe that she had been successful in a divorce action and on or about June 1, 1948, defendant notified McCabe she had been successful in a will contest action; that on or about the same day, June 1, 1948, defendant and McCabe discussed the amount of compensation and as a result thereof McCabe fixed his charge at $3,500 to be due and payable when defendant would receive sufficient money from her deceased husband's estate, which amount defendant agreed and promised to pay; that on or about June 1, 1952, defendant received the remainder of her share in the estate and had received money sufficient to pay McCabe the sum of $3,500 and interest, but that defendant failed to notify McCabe of the fact that she had received said money and had willfully concealed knowledge thereof from McCabe; that on or about December 17, 1956, McCabe had sold, assigned, set over and transferred to the

plaintiff the claim and indebtedness, and that plaintiff assignee was now the owner thereof, and that there was due and owing to the plaintiff the sum of $3,500 and accrued interest thereon from June 1, 1952, at the rate of 6 percent; that no part thereof had been paid although payment thereof from defendant had been demanded.

Defendant demanded a bill of particulars which was furnished by submitting a copy of a written office account kept by McCabe, and which detailed the various conferences between McCabe and defendant, the work done by McCabe, and the amounts advanced by him for the account of defendant.

Defendant, by answer, admitted the corporate capacity of plaintiff and the qualifications of McCabe as an attorney, denied the balance of the allegations of the complaint except that it was admitted defendant received the remainder of her share in the estate on or about June 1, 1952, and that she did not notify McCabe or the plaintiff of that fact.

The cause was tried to a jury which returned a verdict for plaintiff in the amount of $3,500, together with interest at the rate of 6 percent from June 1, 1952. Defendant has appealed from the judgment.

Defendant's main contention is that the court erred in failing to grant a nonsuit at the close of plaintiff's case. This motion was upon the ground that plaintiff failed to prove any agreement between McCabe and defendant as alleged in the complaint, and since the proof established that the relationship of attorney and client was created before the agreement fixing the fees, the complaint and proof was insufficient, in that it did not disclose either by the pleading or proof that the contract was freely entered into.

Keith Morton, a witness for plaintiff, testified he was requested by defendant to assist her with some legal business; that he suggested to her that she see McCabe; that he secured an appointment with McCabe in the spring of 1946, and that he, accompanied by the defendant and her daughter, went to

the office of McCabe where a conference was had; that the same parties met again within a few days, and there were several meetings over a period of two months; that subsequent to April 14, 1946, defendant told him she had employed Mr. McCabe; and thereafter she discussed with him the value of the services rendered by McCabe. On cross examination, he testified that at the suggestion of Mr. McCabe he took the defendant and her daughter to Helena to see John W. Bonner about a case that was going to the Supreme Court. On redirect examination in answer to the question "did Mrs. Anderson ever acknowledge to you that she was indebted to my father?", he replied "Yes, I can't give the exact date, but I do recall in more than one instance she acknowledged that if it hadn't been for Mr. McCabe's handling her matters right when he did, when nobody else seemed to perform for her, she would have been out in the cold, or words to that effect."

He further testified without objection, as follows:

"Q. Do you recall, Mr. Morton, if you can, do you recall any conversation after April 14, 1946, as to the value of services Mr. McCabe rendered? A. You mean '46 or '48?

"Q. I mean after 1946. A. Yes. I don't recall the exact dates, but I remember Mrs. Anderson stated to me, and I agreed with her, that if her interests in this matter at Cut Bank could be honestly and adequately protected that it was well worth five thousand dollars, or possibly more. And I remember Mrs. Anderson saying it was worth more than five thousand dollars. * * *

"Q. Now, Mr. Morton, didn't Mrs. Anderson tell you at one time during the early negotiations that it would be worth five thousand if somebody would take the case and handle it? A. At the very beginning she mentioned something about five thousand dollars, as I recall that part is correct, because in the beginning it was only contemplated that there wouldn't be very much to be done to protect her interest."

Stephen Swanberg testified:

"Q. As a condition of your employment, did Mrs. Anderson tell you that she would pay Mr. McCabe? A. Absolutely, she was going to take care of him."

John W. Bonner, attorney at Helena, testified for the plaintiff and detailed certain correspondence and briefs received from McCabe with reference to the suit; that he had been visited by defendant, her daughter, and Morton, and related their conversations with reference to defendant's case. He stated that Mrs. Anderson wanted to know if he could come into the case, and she "said she didn't know what to do, and the case didn't look good then, and she told me about Mr. McCabe. She went and talked with Mr. McCabe and he spent an evening in the library, and she told me in her own words that he gave her hope that she would have a chance of winning this case. Because Mr. McCabe was not an attorney of record I never did go in for any fees that were paid for her like I did Mr. Hall. We paid Mr. Hall off, and we paid Swanberg and Swanberg, because they were attorneys of record, and I couldn't go in the case with Swanberg and Swanberg unless they were removed as attorneys, and were paid, and then Mr. McCabe kept sending—he sent that memorandum of authorities, then he sent the supplemental memorandum of authorities, and I had no arrangements whatsoever with him, and at the time I got the memorandums I knew nothing about the case, but I checked them, and I came to, oh, substantially the theory, and we went in and fought those cases. Now, I told Mrs. Anderson that Mr. McCabe should be paid, but since he wasn't an attorney of record, whatever transpired between him and Mrs. Anderson, that was their business, what fee they had agreed upon, but I did think Mr. McCabe should have been paid. Now, that is the story of it."

He further testified:

"Q. Now, did Mrs. Anderson ever repudiate to you the claim made by Mr. McCabe? A. No, she never repudiated

the claim of Mr. McCabe, and I never could quite understand. He had helped her, and she told me that, and when it come time when I talked to her about paying Mr. McCabe, it was always delayed. Now, I don't know whether Mrs. Anderson or Mr. McCabe ever agreed on a fee, all I know is what he told me in that memorandum of authorities, and my letters with Mr. McCabe.

"Q. Did you advise Mr. McCabe that Mrs. Anderson would pay him direct? A. Yes.

"Q. And did Mrs. Anderson advise you that she would pay Mr. McCabe? A. That is my understanding.

"Mr. Anderson: We move to strike his understanding.

"The Witness: She told me that.

"Mr. Anderson: I object to his understanding. If there was some conversation, let him testify to it.

"The Court: You will have to get it more definite.

"Q. Do you recall any particular conversations, as to when there were any conversations? A. I can't recall any particular conversations, but I can tell you that we had several conversations particularly after this estate was settled.

"Q. And what was the nature of those conversations in reference to the payment of my father's fee? A. About Mr. McCabe's fee?

"Q. And what was the nature of those conversations? A. Well, I mentioned to Mrs. Anderson, 'What are you going to do about paying Mr. McCabe', because I felt he had done a lot of work in there, and it wasn't up to me. I couldn't pay him because Mrs. Anderson made her own deal with him.

"Q. And did she advise you that she would pay him? A. Yes., that was always my understanding."

In referring to payments he further testified:

"Q. Did Mrs. Anderson advise you whether or not she intended to pay Mr. McCabe out of any particular monies received by her? A. That was my understanding.

"Mr. Anderson: We object to what your understanding was. A. (continuing) She told me she would pay, but the amounts I do not know, because that was a contract between her and Mr. McCabe."

The defendant was called as an adverse witness under the statute, and plaintiff's counsel inquired of her with regard to whether or not she had conferred with McCabe on certain dates over a period of time in reference to which the defendant either denied that she had conferred with McCabe on the dates mentioned or stated that she did not recall. At one point she stated referring to McCabe, "I wanted an attorney, and he said he couldn't take my case."

She also testified:

"Q. Do you recall, on the 7th day of June, 1950, advising Mr. McCabe that you had an agreement with Bonner to pay Mr. McCabe $3,500.00? A. That Mr. Bonner was to pay him.

"Q. Is that what you contend, that Mr. Bonner was to pay him? A. Yes, sir, and that is the truth."

Pursuant to demand, defendant produced the original of a letter written to her on July 11, 1951, by McCabe, which reads: "Dear Mrs. Anderson:

"I deeply regret that your failure to pay me for legal services rendered and monies advanced for your account in connection with the estate of P. B. Anderson, deceased, compells me to institute suit against you to recover what is justly due and owing to me.

"In the thirty-six years I have practiced law, this is the first time that I have been forced to bring suit against a client. Therefore, unless I receive payment of the agreed sum of $3,500, or you make satisfactory arrangements for payment within a reasonable time, I intend to file suit to recover for

the time, money and effort expended by me at your request and in your behalf.

"I have discussed this matter with you on several occasions and you have in substance made the following statements to me.

"(a) That at the time you made your agreement with Governor John Bonner to represent you as your attorney to enforce your claim as the surviving widow of P. B. Anderson, deceased, that he promised that he would pay me my fee out of the fee you agreed to pay him for his services. Governor Bonner has repeatedly denied making such statement.

"(b) You also informed me that when you made settlement with Governor Bonner for services as your attorney and settled with Mr. Bjornlie for the accounting services rendered, you left with Governor Bonner the money for him to pay me my fee. Governor Bonner denies such to be the fact.

"Yours sincerely,
"/s/ E. J. McCabe"

Defendant also identified a postcard written by her and mailed from Kalispell, Montana, on September 20, 1946, to McCabe wherein she stated she would see him on Monday, September 23, but she testified that she had no recollection of any conference with McCabe on that date. McCabe's office record, hereinafter referred to, shows a notation that such a consultation occurred on that date.

E. J. McCabe, Jr., acting as attorney for the plaintiff herein, stated to the court that his father, E. J. McCabe, Sr., had suffered a cerebral hemorrhage, and had been advised by the doctor that it would be a risk to have him testify. E. J. McCabe, Jr., was then sworn as a witness for the plaintiff and testified that he had taken the original ledger entries from the office of the elder McCabe, that they were in the handwriting of the senior McCabe, and were made by the senior McCabe from time to time for services rendered in this matter. Defendant objected on the ground they were immaterial for any

purpose except to prove performance, but he was willing to waive any foundation requirement and let them be admitted, if it was understood that they were not admitted for the purpose of proving *quantum meruit*. This stipulation was agreeable to plaintiff and upon that basis they were received in evidence by the court.

Defendant contends that since the complaint alleges an express oral contract recovery cannot be had on a *quantum meruit,* and for that reason the motion for nonsuit should have been sustained.

■ The general rule is as contended for by defendant. 17 C.J.S. Contracts § 569, p. 1203.

But here, the express contract, according to the complaint, was for the payment of a reasonable fee to be agreed upon if the defendant were successful in the litigation then pending in which she had an interest. Action on the express contract still involved the reasonable value of the services rendered. In some cases the value of the services may be shown without a pleading in *quantum meruit*. Compare Parker v. Macomber, 17 R.I. 674, 24 A. 464, 16 L.R.A. 858.

■ On motion for nonsuit the evidence must be viewed in the light most favorable to plaintiff. Gohn v. Butte Hotel Co., 88 Mont. 599, 295 P. 262; Stranahan v. Independent Nat. Gas Co., 98 Mont. 597, 41 P.2d 39, and every fact must be deemed proved which the evidence tends to prove. Mellon v. Kelly, 99 Mont. 10, 41 P.2d 49; Lesage v. Largey Lumber Co., 99 Mont. 372, 43 P.2d 896; Meinecke v. Intermountain Transp. Co., 101 Mont. 315, 55 P.2d 680; McCulloch v. Horton, 102 Mont. 135, 56 P.2d 1344.

■ Thus, viewing the evidence we find it sufficient to sustain the allegation that defendant promised to pay McCabe the reasonable value of his services which she regarded as being well worth $5,000.

It is, of course, of no consequence that the evidence was

504

conflicting; that would still leave the question one for the jury to determine.

We point out, too, that defendant did not deny that the services were worth $3,500. Concededly she received the letter of July 11, 1951, written to her by Mr. McCabe wherein he demanded the sum of $3,500 which he stated in the letter was the ''agreed sum''. She never repudiated this assertion of the sum agreed upon. Her only claim was that Mr. Bonner, and not she, should have paid the fee to Mr. McCabe.

But, as above noted, there was evidence that she promised to pay Mr. McCabe. Also Bonner received letters from McCabe advising him of the agreed fee of $3,500. Bonner thereafter talked with defendant about the fee and testified that she never repudiated the claim of McCabe but on the contrary told Mr. Bonner that she would pay McCabe direct.

■ If there were any variance between the pleading and the proof, it did not prejudice any right of defendant. A variance which does not mislead a defendant to his prejudice is insufficient to warrant the granting of a motion for nonsuit. Wilcox v. Newman, 58 Mont. 54, 190 P. 138, and R.C.M. 1947, § 93-3901.

■ Contention is also made that the proof was insufficient to show that the agreement to pay a fee of $3,500 was freely entered into within the requirement of Coleman v. Sisson, 71 Mont. 435, 230 P. 582. There is some evidence tending to show that defendant was willing to pay $5,000 as a fee. Hence, it follows that the jury was warranted in finding from the evidence that the agreement to pay $3,500 was freely made.

■ The evidence also supports an account stated. Roy v. King's Estate, 55 Mont. 567, 179 P. 821. Evidence to support the account stated went in without objection, and in fact the case was tried on that theory.

Defendant offered amendments to an instruction proposed by plaintiff to present that issue to the jury. As amended the instruction went in without objection and reads as follows:

"You are instructed that there is evidence introduced in this case which shows that certain written communications in form of letters to defendant, were mailed to defendant, wherein E. J. McCabe asserted there was a balance of $3,500.00 owing him for services, and if you find from a preponderance of all the evidence in this case that no objection was ever made by the defendant to the correctness of such balance claimed due, it is presumed that the alleged balance was due and owing said McCabe as a presumption of law, but such presumption may be overcome by other evidence."

But defendant contends that there can be no recovery on the theory of an account stated because of a want of proof that defendant did not object to the account. Her contention is that there must have been a failure to object to Mr. McCabe.

Here again the proof was sufficient to show that defendant failed to object to the account to defendant's agent and attorney, Mr. Bonner, who discussed it with her and that was sufficient. She did not contend that she objected to the account to either Mr. McCabe or Mr. Bonner. As above noted, her only claim was that Mr. Bonner and not she should pay the fee. The court did not err in overruling the motion for nonsuit.

What has already been said applies also to the ruling of the court in denying the motion for a directed verdict. The court was right in so doing.

Defendant contends that the court erred in admitting in evidence the following letter written by Mr. McCabe and addressed to Mr. Bonner:

"Re: Anderson Estate

"Dear Governor:

"Please excuse my failure to acknowledge your letter of recent date pertinent to the visit of Mrs. Emelia Anderson to your office. I see no reason why Mrs. Anderson should be 'vexed' at me as I have merely been attempting to collect for services rendered her and for which she agreed to pay me the

sum of $3,500.00 in the event she was successful in winning her action finally in the Supreme Court. This amount was due me in 1948 after she received the decision in her favor in the case in the Supreme Court.

"She has never denied owing me this money in fact at the time we discussed the amount to be paid me she suggested the sum of $5,000.00 as the amount of my fee. At which time I told her that I would not feel justified in making that charge and told her then the amount I would charge if she was successful in the case. I further agreed with her that if she was unsuccessful I would make no claim for services rendered nor for cash monies I had advanced.

"Among the services rendered were services rendered in effecting adjustment of a controversy which she was at the time having with her attorneys. In addition to the foregoing I made trips to Cut Bank at her request to check the court proceedings. I also obtained the filing of objections to the probate of the Will that was offered at a time when Mrs. Anderson was involved in a controversy with Messrs. Swanberg and Swanberg and who had not filed objections to the probate of the Will offered as late as the afternoon before the date set for the hearing of the petition for probate of the Will. I also obtained an extension of time to enable her to obtain attorneys to appear in one of the proceedings connected with the controversy. At her request I had many long conferences with her attorneys. I further expended a great deal of time in looking into the law to enable her to make a decision as to whether she would accept $10,000.00 as a full compromise settlement for all interests and claims which she had in the Estate of P. B. Anderson, and which sum had been suggested to her then attorneys by attorneys for the Anderson heirs.

"This work was done by me with the then consent of her attorneys. After she retained you pursuant to appointment I made for her and Mr. Morton to meet with you, she consented

to my furnishing you the brief which I prepared and which I later delivered to you.

"There has been no controversy between Mrs. Anderson and me as to the indebtedness owing me. Her contention has been that you had an agreement with her that you would pay me the amount of my claim out of your share of the contingent fee agreed upon between you. In discussing this phase I informed her that I had no agreement or arrangement with you to pay same and that I looked to her for payment. This conversation occurred in the presence of third parties.

"In order to get this matter disposed of I offered to compromise the amount of my claim but Mrs. Anderson has never acted upon my offer. Inasmuch as Mrs. Anderson has recently taken up the matter of my claim with you and which resulted in your writing me the letter above referred to, I am willing to accept from Mrs. Anderson what reasonable sum you may fix as a compromise settlement. I submit such proposal only for purposes of compromise but without waiving my rights in the event such compromise proposal is not acted upon.

"I am mailing a copy of this letter to Mrs. Anderson.

"With kindest personal regards,

"Yours sincerely,

"(Signed) E. J. McCabe"

When this exhibit was first offered in evidence it was objected to and the objection was sustained. Sometime later it was offered and received without objection. Defendant is thus in no position to claim error in receiving it in evidence.

Defendant contends that the court erred in receiving in evidence certain documents from the estate of P. B. Anderson, deceased. These were admitted to prove that defendant was successful in procuring property of the estate which was a condition precedent to McCabe's right of recovery. The court did not err in receiving these exhibits in evidence.

Finding no reversible error in the record, the judgment is affirmed.

508

MR. JUSTICES BOTTOMLY, ADAIR, and CASTLES, concur.

MR. CHIEF JUSTICE HARRISON:

I dissent.

I believe the complaint herein frames a cause of action on an express oral contract. Unless the evidence adduced at the trial tends to prove the issues thus raised, a nonsuit should be properly sustained. Evidence which tends only to prove an implied contract or *quantum meruit* will not be sufficient to withstand the motion.

In 17 C.J.S. Contracts § 569, p. 1203, it is said: "* * * generally, and at common law, in an action brought on an express or special contract plaintiff cannot recover on proof of an implied contract, or on *quantum meruit*, unless the pleadings are amended to conform to the proof."

In 41 Am.Jur., Pleading, § 375, p. 551, it is said: "If the plaintiff in his declaration or complaint relies on an express contract, he must prove it as laid, and cannot support his case by proof of an implied one, especially in the absence of an allegation of value."

This latter statement was cited with approval by this court in Johns v. Modern Home Crafters, Inc., 134 Mont. 76, 81, 328 P.2d 641.

None of the evidence adduced at the trial tends to prove an express oral contract. In fact, two of plaintiff's major witnesses, on whose testimony much reliance is placed by plaintiff, specially denied knowledge of an express oral agreement. Mr. Keith Morton testified:

"Q. Now, did you at any of these conferences hear a definite agreement orally made between Mr. McCabe, Sr., and Mrs. Anderson as to payment for services? A. No, I did not hear any specific agreement, no.

"Q. And if there was such an agreement you do not know when it occurred? A. That is correct.

"Q. That is of your own knowledge? A. That is the truth, I don't know when it occurred."

Mr. John W. Bonner testified in part: *"Now, I don't know whether Mrs. Anderson or Mr. McCabe ever agreed on a fee,* all I know is what he told me in that memorandum of authorities, and my letters with Mr. McCabe." Emphasis supplied.

Section 93-3901, R.C.M. 1947, provides:

"No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been so misled, the court may order the pleadings to be amended, upon such terms as may be just."

Section 93-3903, R.C.M. 1947, provides:

"Where, however, the allegation of the claim or defense, to which the proof is directed, is unproved, not in some particular or particulars only, but in its general scope and meaning; it is not to be deemed a case af variance, within the last two sections, but a failure of proof."

With reference to these sections, this court said in American Livestock & Loan Co. v. Great Northern Ry. Co., 48 Mont. 495, 502, 138 P. 1102, 1104, that "where one contract is pleaded and another one is proved, or where the complaint alleges one breach of duty, and the evidence establishes a different one, the variance amounts to a failure of proof, upon the occurrence of which a nonsuit is proper."

In my opinion there was a failure of proof as to the issue of an express oral contract as framed by the pleadings, and the motion for nonsuit should have been granted.