E. MAYNARD SMITH AND HOLLEY RANDALL SMITH, HIS WIFE, PLAINTIFFS AND RESPONDENTS, *v.* RUDOLPH POLISH AND ESTELLA POLISH, HIS WIFE, DEFENDANTS AND APPELLANTS.

No. 11306.

Submitted September 12, 1967. Decided December 18, 1967.
Rehearing denied December 27, 1967.
435 P.2d 776.

Poore, McKenzie, Roth & Robischon, Robert A. Poore (argued), Butte, for appellant.

Corette, Smith, Dean & Wellcome, Kendrick Smith (argued), Butte, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal results from a verdict in favor of the respondents for money damages arising from a breach of an agreement to assign a certain grazing permit as a part of a contract for the sale of appellants' ranch.

In 1963 the respondents visited Montana looking for a ranch. Liking what they saw in the Big Hole Valley they returned in February 1964. They were then guests of the appellants, at the Glen Ranch, and were shown the various ranches during this visit. The appellants' ranch properties consisted of the home ranch, the Glen Ranch, the upper ranch, and the Feeley ranch. During this February visit the respondents were able to see the Feeley Ranch only from the road due to snow conditions. They were informed that in addition to these properties the appellants had a 290 head permit on forest lands. During the visit the respondents evidenced an interest in purchasing the ranch which resulted in a letter to them at their home in California. This letter dated April 7, 1964, set forth more spe-

cific details concerning the proposed sale, and set forth the forest permit land as follows: "I have lease from Anaconda Co., summer grazing permit for 125 head from June 25 to October 10 at a cost of $328.50, or 75¢ a head per month for cow and calf pair. Also 165 head same deal on the national forest or a total of 290 head June 25 to October 10, which covers suitable time to graze this range." The letter also set forth that the sale would be of some 3,815 acres, plus a state lease of 640 acres.

The respondent Maynard Smith returned to Montana in May and along with the appellants and a Mrs. Gage, a realtor, journeyed over the entire ranch, including the leased or permit property. Again the Anaconda lease permit was discussed. In July the respondents returned to Montana, at which time respondents and appellants entered into a written receipt and agreement to sell and purchase dated July 14, 1964. This agreement was made through the real estate office of Mrs. Camilla Gage. This agreement did not specifically describe the lands but set forth that they were in the counties of Beaverhead and Silver Bow and within certain described sections, townships and ranges. The purchase price was specified at $275,000, payable $5,000 down, $120,000 on or before the 15th day of October, 1964, and the balance by assuming liens, being contracts and mortgages then existing upon the lands. The machinery and equipment included in the sale are listed on the contract, including provision for payment by purchasers of specified sums of money owing on some of the inventoried equipment in addition to the specified purchase price.

This agreement also contained this provision:

"6. Purchaser enters into this Agreement in full reliance upon his independent investigation and judgment and there are no verbal or other agreements which modify or affect this Agreement."

The agreement is dated July 14, 1964, and the testimony is that on that date appellants and respondent Maynard Smith

were at the home of the appellants. Camilla Gage prepared the agreement, later took it over to the appellants for their signatures and sent it to California to the respondents, as she testified, on July 20th. Maynard and Holley Smith both testified they executed the agreement in California. Maynard Smith stating, in answer to this question: "But you were in California when you signed the instrument? A. Yes, I wanted my attorney to look it over."

During each of these visits the respondent Maynard Smith testified that the Anaconda Company permit was discussed, that the appellant had, during the visits they had, also discussed the terms of the agreement, the lease or permit, the number of cattle and how the present Anaconda permit fit into the forest lease permit. In August, about a month after the agreement to sell and purchase was signed, the respondent Maynard Smith went with the appellant to see Mr. Lynn Boe, supervisor of the Anaconda Forest Protection Service, and at that time appellant informed Boe that he was going to sell the ranch to the respondent. According to Mr. Boe's testimony appellant asked him if there was a possibility of his transferring this lease to Mr. Smith. Concerning this transaction the following testimony was given:

"A. At that time I told him I had transferred grazing lease and cabin site permits before, and as far as I could see, there would be no problem, just a matter of formality and going through the proper channels.

"Q. And at that time did you inform the parties about what to do about the transfer of this lease? A. I told Mr. Polish that when the sale was consummated that I would start the necessary machinery rolling, draw up the proper papers, the transfer papers, send it to him, to Mr. Smith for signature, and in turn send it to the Land Management in Bonner for approval.

"Q. All right, now at the time Mr. Polish and Mr. Smith came into your office, did you do anything in respect to get-

ting any papers or anything of that nature? A. At that time all I did was pull out Mr. Polish's file, open it up, showed him the lease, the annual statement, and there was other correspondence in there that was irrelevant, but—and we talked about it.

"Q. Now, Mr. Boe, at that time did Mr. Smith see this lease? A. Yes.

"Q. And how did he see it, that is what did you do with it, so that he could see it? A. It was laying on the desk, the file was open. He looked it over and laid it back down.

"Q. Did he pick it up in his hands? A. As I recall he did.

"Q. And for how long a time did he have it in his hands? A. Oh, just a few minutes.

"Q. Did he look at both sides of the lease? A. I'm quite sure he turned the lease over, back to the back side.

"Q. Did you point out any item from the lease to him? A. I pointed out the annual lease renewal each year.

"Q. That is you pointed out that it was only a one-year lease? A. That is correct.

"Q. And that was renewable each year? A. Yes."

In September the respondent Maynard Smith came back to Montana and spent several weeks with the appellant participating in the Fall roundup. In this manner he became further acquainted with the various properties of the ranch including the Forest and Anaconda Company permit lands.

Respondent Maynard Smith later returned to California and later in October he returned for the purpose of finalizing the sale. On October 27th, the various parties to the agreement and Mrs. Gage met at Dillon in the law office of Burns and Collins, and what is entitled a supplemental agreement had been drawn up for the parties by Mr. Burns.

This supplemental agreement describes the Polish lands by legal description, states that appellants have contemporaneously conveyed by warranty deed to respondents all the Polish lands. The purchase price stated is identical with the agree-

ment to sell and purchase but a change was made in the method of payment. Instead of a cash deal as contemplated in the agreement to sell and purchase a time payment arrangement was provided, note executed for the balance due, secured by mortgage on the premises. The agreement to sell and purchase provided the purchasers would be responsible for real estate taxes only from October 15, 1964. The supplemental agreement provides that the taxes for 1964 shall be pro-rated, sellers to pay 19/24ths thereof and purchasers 5/24ths thereof, being the exact division contained in the agreement to sell and purchase. Burns testified that he left the contract open so that anything could be added prior to the signatures. The fact that the Anaconda permit was not included came up at this conference, and while there is conflict as to which party brought the matter up, the permit was added to the supplemental agreement in paragraph 12 and reads as follows:

"That there is also a Forest lease with the Anaconda Company which lease is herewith assigned to the second parties."

It is upon the alleged inability of appellants to fully perform this provision of the contract that the respondents base their complaint for damages. Unknown to either party the Anaconda Company had for several years contemplated the sale of what is known as the Mount Haggin Ranch which included the Polish lease. Exactly when the date of the sale was consummated was not given, but the appellants allege that the very first information they had was a letter received from Mr. Boe, the supervisor of the Anaconda property, dated November 20, 1964, which reads:

"11-20-64

"Mr. Polish:

"As a result of the meeting I attended in the Butte office, I informed Mr. Piper of the sale of your ranch holdings and desire to transfer of lease to the new owner.

"Mr. Piper advised me that it would be wise to hold off on the transfer of lease due to the fact that the Company is in

the process of selling all of their grazing lands. This sale is in the fire and will undoubtedly become effective before the next grazing season.

"When the sale of these grazing lands were first discussed I was under the impression that it would just be the Mount Haggin lands but I was informed later that all grazing lands would be sold.

"I would gladly discuss this matter with if you wish. I will be in my office Monday morning Nov. 23.

"If you desire more information about this sale and how it will effect your lease, Mr. Dave Piper can tell you more about than I can.

"Mr. Piper's office is in Room 515 in Hennessey Bldg. Butte.

Sincerely<br>Lynn R. Boe"

Boe testified that "that date was the first time he knew of the sale or prospective sale of the Anaconda Company property," and that on the day that Mr. Piper, an Anaconda official, called him that he, Boe, was in the process of drawing up the transfer papers to take to Mr. Smith and Mr. Polish in line with his agreement with Mr. Polish in a phone call of November 11th or 12th informing him that the sale to Mr. Smith had been consummated.

The appellant Rudolph Polish testified that up until the day he received the letter from Boe, being November 21, 1964, he knew nothing about the proposed sale of the Mount Haggin ranch, or that his permit was in any way in danger; that when he received Boe's letter, the respondent Maynard Smith was with him, and that they discussed the matter and at Smith's suggestion he went to Butte to see Mr. Piper to see if the permit could either be renewed or if Smith could purchase the land covered by the permit. Appellant testified that prior to November 23, 1964, he had never seen or met Mr. Piper, and that he met with him the 23rd and again on the 24th to see if anything could be done to get the land in question. Appellant

also testified that on this trip to Butte he saw a Mr. Ed Quinn, an Anaconda official, and that both of these men informed him that the Anaconda Company was in the process of considering the sale and that the lease would not be issued at that time.

Both Mr. Quinn and Mr. Piper testified for the respondent to the effect that the appellant had come to see them about the permit, but both thought that the meeting was sometime late in the Summer or Fall of 1964. Neither had notes on the exact time though both agreed that appellant tried to either lease or purchase.

As a result of the sale of the Mount Haggin ranch the respondent was unable to obtain a lease for 125 head and he testified that he was damaged to the extent of 36 to 40 animal units valued at $500.00 per animal unit or $18,000.00 to $20,-000.00. Camilla Gage, who was allowed to testify as an expert in this field of damages due to her experience as a realtor, testified that in her opinion the value of the summer range 3½ months was from $125.00 to $150.00 per head for 125 head or from $15,625 to $19,250. The jury's verdict was for the respondents in the amount of $12,500 with a verdict for appellants against respondents on their counterclaim in the amount of $5,410.

The issues we are called upon to consider are:

(1)  The sufficiency of the pleadings;
(2)  Sufficiency of evidence to justify the verdict;
(3)  Construction of the contract; and
(4)  Measure of damages.

We find no merit to appellants' first issue that the complaint fails to state a claim for relief. Under our rule 8(a), M.R.Civ.P., the complaint is sufficient if it contains a short plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief which he deems himself entitled to.

When the respondents rested their case the appellants moved for a nonsuit alleging the issue of sufficiency of proof in estab-

lishing an agreement, proof of damages or any injuries resulting therefrom.

On motion of nonsuit the evidence must be viewed in the light most favorable to the plaintiff. Gohn v. Butte Hotel Co., 88 Mont. 599, 295 P. 262; Stranahan v. Independent Natural Gas Co., 98 Mont. 597, 41 P.2d 39; and every fact must be deemed proved which the evidence tends to prove. Mellon v. Kelly, 99 Mont. 10, 41 P.2d 49; Lesage v. Largey Lumber Co., 99 Mont. 372, 43 P.2d 896; Meinecke v. Intermountain Transp. Co., 101 Mont. 315, 55 P.2d 680; Arrow Agency v. Anderson, 137 Mont. 494; 355 P.2d 929. This motion of nonsuit will be considered and handled as a motion for a directed verdict as provided for in Rule 50, M.R.Civ.P.

We recognize this rule as being well-established, however, in the instant case, the respondents failed to prove their cause of action. Here the respondents knew or should have known that the lease referred to in Paragraph 12 of the contract was not assignable, but he relied, as did appellant, on the fact the Anaconda Company had assigned the lease previously.

The respondent in his cross-examination testified that in August 1964, desiring to confirm the 125 cattle permit, he went to the Anaconda Company office where he saw Mr. Boe and they discussed the permit.

As previously set forth the testimony at the trial showed that the respondent saw, had a chance to read and familiarize himself with the lease at this conference, and the court so instructed the jury.

While it is inferred by the respondent that the appellant had knowledge that the Anaconda Company was selling the land in question a careful reading of the testimony clearly shows the contrary. Both Mr. Piper and Mr. Quinn, testifying some two years after the visits of the appellant, put the time of the meetings during the Summer or Fall of 1964. Both Mr. Piper and Mr. Quinn were indefinite as to the time of appellant's visits to their offices, putting the visits in late Summer or

the Fall of 1964, but both agree on one fact, and that is that the two visits concerned the release or purchase of the leased area, and that these visits were the only ones they could recall meeting the appellant. When this testimony is considered along with that of Mr. Boe, the respondent, and appellant, it is clearly evident that appellant's visits were not until after the Boe letter of November 21st, nearly a month after appellant had transferred any interest he had in the Anaconda Company lease to the respondents. Whether there is any substantial evidence in the case made by the party upon whom the burden rests is always a question of law.

While the fact situation differs here from the case of West v. Wilson, 90 Mont. 522, 4 P.2d 469, the principle here controlling is set down in citing Chief Justice Brantly's opinion in Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 P. 458. The principle is the same: " 'The old rule that a case must go to the jury if there is a scintilla of evidence has been almost everywhere exploded. There is no object in permitting a jury to find a verdict which a court would set aside as often as found. The better and improved rule is, not to see whether there is any evidence, a scintilla, a crumb, dust of the scales, but whether there is any upon which a jury can, in any justifiable view, find for the party producing it, upon whom the burden of proof is imposed.' [Connor v. Giles, 76 Me. 132.]" When we come to consider whether there is substantial evidence to warrant a verdict, we find practically no "dust on the scales" in favor of the respondents.

Neither court nor jury can disregard unimpeached creditable evidence. West v. Wilson, (supra). Here the evidence clearly indicated that after considerable negotiations the parties to this contract finalized it in terms of a Supplemental Agreement dated October 27, 1964, wherein appellant assigned his forest lease to the Anaconda Company property. He could do no more and the later action by the Anaconda Company in selling the property, thereby terminating the lease, was be-

yond his control. He conveyed what interest he had as per agreement, and the later action by the Anaconda Company making it impossible for the respondent to release the forest land is not a breach of a duty to perform on appellant's part.

The respondents having failed to show a failure to perform the contract by the appellants by clear and satisfactory evidence, the court should have determined as a matter of law that there was no substantial evidence on their behalf for submission to the jury, and should have granted appellants' motion for directed verdict.

The judgment is reversed, the cause remanded to the District Court of Beaverhead County, with directions to vacate the judgment against appellants. No question having been raised in this appeal on the counterclaim that judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and CASTLES concur.